## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Laurestine Hatchett,

           Debtor.

    Hon. Marci B. McIvor

Ch. 7 Case No.  17-45163-MBM

_____/

Homer W. McClarty, Chapter 7 Trustee,    Adv. Case No. 17-4669-MBM

v.

Ayanna Hatchett, Co-Conservator and Co-Guardian,
Franklin Hatchett, Co-Conservator,
Ayanna Hatchett, individually and,
Franklin Hatchett, individually,

           Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY DISPOSITION

For all the reasons stated in the attached brief in support of this response to Plaintiff's Motion for Partial Summary Disposition, Defendants humbly requests that this Honorable Court deny Plaintiff's motion in its entirety.  Further, Defendants request a hearing in this matter to be set at this Court's convenience.

           Respectfully submitted,

           By:  */s/ Ayanna D. Hatchett*         
           Counsel for Defendant Ayanna D. Hatchett (Pro Se)

1

Counsel for Defendant Franklin L. Hatchett
535 Griswold, Ste 2632
Detroit, MI  48226
(313) 324.8300
ahatchett@venjohnsonlaw.com

Dated: May 1, 2018

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Laurestine Hatchett,

              Debtor.

              Hon. Marci B. McIvor

              Ch. 7 Case No.  17-45163-MBM

_____/

Homer W. McClarty, Chapter 7 Trustee,    Adv. Case No. 17-4669-MBM

v.

Ayanna Hatchett, Co-Conservator and Co-Guardian,
Franklin Hatchett, Co-Conservator,
Ayanna Hatchett, individually and,
Franklin Hatchett, individually,

              Defendants.

_____/

## BRIEF IN SUPPORT OF THE DEFENDANTS' RESPONSE TO TRUSTEE'S MOTION FOR PARTIAL SUMMARY DISPOSITION

### STATEMENT OF FACTS

The defendants—Franklin Hatchett (Frank) and Ayanna Hatchett (Ayanna)—are the children of Mrs. Laurestine Hatchett (the debtor) and her husband—Attorney Mr. Hatchett (Mr. Hatchett).   Mr. and Mrs. Hatchett have shared the same household as husband and wife for almost 60 years. Mr. Hatchett is 82-years old and Mrs. Hatchett is 79-years old.

It became apparent to the defendants that Mrs. Hatchett's capacity to manage her own affairs had substantially diminished over time. Mr. Hatchett had been and still does, take care Mrs. Hatchett. However, with both parents getting on in years, Frank and Ayanna decided that as a practical matter someone other than just their father should be in position to continue caring for their mother, if anything should ever happen to their father.

Frank and Ayanna thus petitioned the probate court. On August 29, 2014, they petitioned to become co-conservators for their mother. On the same date, Ayanna petitioned to share co-guardianship with her father. Both petitions were granted by the probate court on September 17, 2014. (**Exhibit1**: Probate Orders Granting Petition) Ayanna's Acceptance of Appointment to serve as her mother's co-guardian and co-conservator with her father and brother respectively were filed on November 20, 2014. (**Exhibit 2**: Acceptance of Appointment-Ayanna) Likewise, Frank's Acceptance of Appointment to serve as co-conservator and Mr. Hatchett's Acceptance of Appointment to serve as co-guardian were filed on December 19, 2014. (**Exhibit 3**: Acceptance of Appointment—Frank and Mr. Hatchett)

Atty. Alan Ackerman is the creditor behind this adversarial action

Through these proceedings, the defendants have become aware of the

$840,000.00 personal loan that was made by Atty Ackerman to their

parents, Laurestine and Mr. Hatchett on or around October 30, 2006.

The loan was purportedly secured by a mortgage on their former family

residence in Bloomfield Hills Michigan at 285 W. Hickory Grove Road.

(**Exhibit 4:** Mortgage and Assignment) Mr. and Mrs. Hatchett raised all

three of their children in the subject Bloomfield Hills' property, including

Frank and Ayanna. The five-bedroom, four bathroom living space totaled

approximately 4,014 square feet not including the indoor tennis court and

swimming pool.

Of the original $840,000.000 loaned, Ackerman has recovered

$1,193,537.85 to date. Thus, since the original principal, at least

$353,537.85 in interest has been paid to Ackerman through Mr. and Mrs.

Hatchett alone. The involuntary Chapter 7 and accompanying adversary

suits are directed toward recovering Ackerman's additional profit as

captured by a deficiency judgment in 2016 of $368,222.14 or more.

After Atty. Ackerman filed his foreclosure action on February 16,

2012 in Oakland County Circuit Court (Case No. 12-125013-CH) against

land contract vendee, Angela White, Ackerman organized 285 W. Hickory Grove, LLC and assigned his interest over to the limited liability company for the consideration of $1.00 on or around September 10, 2013. (**Exhibit 5:** Docket and Deficiency Judgment)

The terms of the note allowed up to two 24-month periods of interest-only payments at $3,500.00 per month. The first two years began on December 1, 2006 and were scheduled to end on November 1, 2010 at which time the entire principal of the loan would become due, unless the borrower chose to extend for another 24-month period. The Borrowers— Mr. and Mrs. Hatchett—elected to pay the last 24-month term that would go from November 1, 2008 through to November 1, 2010. But, roughly four to five months before the last term expired, Ackerman told them they needed to prepare to vacate 285 W Hickory Grove Road because he had supposedly found a purchaser—Angela White—for 285 W. Hickory Grove under a land contract for an amount sufficient to wipe out Mr. and Mrs. Hatchett's remaining obligation.

By August of 2010, Mr. and Mrs. Hatchett had moved out of the property and made way for the new purported owner Angela White. Hence, Mr. and Mrs. Hatchett had paid Ackerman $147,000.00 in

6

interest-only payments alone between December 1, 2006 and when they moved out in 2010.

Approximately two years later, Ackerman declares White in default and files a foreclosure action in 2012, naming Mrs. Hatchett as a plaintiff along with himself. There was a sheriff sale filed in the earlier foreclosure action against White as well on November 20, 2012 and eventually a judgment of deficiency that was entered. (**Exhibit 6**: Deficiency Judgment –3-30-16) The Judgment of Foreclosure relied upon by the trustee here was apparently issued against Mrs. Hatchett on October 10, 2014. (**Exhibit 7**: Judgment of Foreclosure).

The subject Florida condominium that was co-owned by Frank and his mother was sold on March 6, 2015. Ackerman filed his Proof of Claim in Oakland County Probate Court on May 11, 2016. (**Exhibit 8:** Proof of Claim).

As the Condo property was co-owned, Franklin received roughly half of the net proceeds; he gave the other half to his father, Mr. Hatchett – Laurestine's appointed co-guardian – who placed it in his law office trust account to be used for her benefit. As noted by Franklin, his father

7

had always taken care of his mother in an exemplary fashion. (**Exhibit 9**: Frank's Deposition, p. 57).

In 2005, Debtor's husband, Mr. Hatchett entered into an agreement with the Internal Revenue Service regarding his tax situation. This agreement was followed to the letter, with monthly payments and reporting requirements, based upon a formula established by the government. Mr. Hatchett never missed a report or payment, and clearly had an ethical and legal obligation to report and pay these taxes. As such, approximately $75,000 of the Condo proceeds were used to pay a tax liability for Mr. Hatchett Hatchett's law firm as required under the agreement with the government. The payment of this debt insured that the primary breadwinner – famed attorney Mr. Hatchett – would be able to continue practicing and proverbially, "Bringing home the bacon," ensuring that Laurestine standard of living would not be negatively effected:

> Q.  What did your mother receive in exchange for the payment of $75,000 of your father's tax liabilities?
>
> A.  Essentially she just maintained her standard of living. Without it, her standard of living would have diminished.

Q.   Couldn't she have done that with $75,000 in her own name?

A.   For a short term, yes. Not long term.

Q.   How long of a term do you think that $75,000 would have lasted with her expenses?

A.   Well, from this standpoint -- let's look at it from this standpoint: If you put 75 back in your business, and this business is how you make your living, then that living is going to sustain you for the rest of your life. That's how I would look at it.

(**Exhibit 9:** Frank's Deposition, p. 72)

The co-conservators in this matter had a legal obligation to expend the funds as they did for the benefit of Debtor, including attempting to salvage a standard of living for which she has become accustomed. M.C.L. 700.5425(b) provides in relevant portion:

> (b)The conservator shall expend or distribute money reasonably necessary for the support, education, care, or benefit of the protected individual or a dependent with due regard to all of the following:

> (i) The estate size, the conservatorship's probable duration, and the likelihood that the protected individual, at some future time, may be fully able to be wholly self-sufficient and able to manage business affairs and the estate.

> (ii) The accustomed standard of living of the protected individual and the dependents.

(iii) Other money or sources used for the protected
individual's support.

Debtor is not improving, and indeed is declining in cognitive ability
which she has a genetic predisposition toward. There will not come a
time when she will be able to handle her own affairs, barring a miracle
cure for Alzheimer's. However, it must be remembered that Debtor has
a certain standard of living that she has become accustomed to – as the
wife of prominent attorney Elbert Hatchett she was used to a lifestyle
that would be considered somewhat upper class. However, on her own,
she could never recreate her lifestyle. Even with the income Elbert
receives from the law office, her lifestyle has been diminished. As noted,
the Hickory Grove property where the siblings grew up was lost, and now
the senior Hatchett's reside in Ayanna's Bristol Park property, paying
rent and taxes when they can afford. The use of the funds for sporadic
payments on the Bristol Park property, or sporadic payments to repay
Franklin on the leased vehicle are clearly prudent, as was any use of the
proceeds of the Florida property for such matters, including continuance
of the law office which provides her proverbial daily bread.

## STANDARD OF REVIEW

Federal Rule of Procedure 56 (a) for summary judgment is incorporated into Federal Rules of Bankruptcy Procedure 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). " [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. A " genuine" issue is present " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Berryman v. Rieger</u>, 150 F.3d 561, 566 (6th Cir. 1998) (quoting <u>Anderson</u>, 477 U.S. at 248).

## ARGUMENT

I.  **The Probate Court retains exclusive jurisdiction over all matters concerning or related to the parties' fiduciary powers.**

Probate court retains exclusive jurisdiction over all matters related to a fiduciary's powers.  MCL 700.1302.   This includes deciding matters brought by or against a fiduciary.  MCL 700.1303(1)(h).  The basis to

challenge a fiduciary's management or distribution of funds the use of a protected individual also fall within the exclusive domain of the probate court. MCL 700.5402(b). The challenge raised by Plaintiff in this motion for partial summary disposition solely concerns an allegation that the defendants breached their fiduciary duties to their mother. Such a challenge plainly falls within the powers contemplated when granted by statute to the probate courts in the state of Michigan.

Defendants finalized the accounting for Debtor's property sale after specifically obtaining court permission to sell the property. They followed all of the necessary steps for such a transaction, yet the creditors who seek to attach the proceeds of the sale were nowhere to be found during the pendency of the guardianship proceedings at the Oakland County Circuit Court.

Ackerman filed a request for a Notice of Conservatorship the same day he filed his Proof of Claim referred to Plaintiff's statement of facts, in the Oakland Probate Court on May 11, 2016. This notice alerted him of all proceedings and filings made in Debtor's conservator and guardian files. As such, the creditor was under Notice of the existence of such claims, but failed to seek redress at the appropriate Court.

12

MCL 700.5402 provides:

> After the service of notice in a proceeding seeking a conservator's appointment or other protective order and until the proceeding's termination, the court in which the petition is filed has the following jurisdiction:
>
> (a) Exclusive jurisdiction to determine the need for a conservator or other protective order until the proceeding is terminated.
>
> (b) Exclusive jurisdiction to determine how the protected individual's estate that is subject to the laws of this state is managed, expended, or distributed to or for the use of the protected individual or any of the protected individual's dependents or other claimants.
>
> (c) Concurrent jurisdiction to determine the validity of a claim against the protected individual or the protected individual's estate, and questions of title concerning estate property.

Clearly, the Court with exclusive jurisdiction to deal with the question of whether Debtor's estate was being "managed, expended, or distributed to or for the use of the protected individual or any of the protected individual's dependents" was the Oakland County Circuit Court. Simply put, whether Father, Son, and Daughter ran off with Debtor's money would have been properly decided at the Oakland County Probate Court. They of course, did not do such a thing, but had they, such could have been taken care of in real time by the Court with the best

vantage point to do so – the Oakland Probate Court. Indeed, any such nefarious activities could have been stopped before the occurred; however, rather than availing themselves of the appropriate mechanism of the Probate Court, they instead waited until the involuntary bankruptcy petition to now try and retroactively assert such rights. At the very best this is improper forum shopping, and the worst an improper collateral attack on the prior legitimate judgment of a state court in violation of the Rooker-Feldman Doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). While that doctrine has traditionally been applied to Federal District Courts reviewing state court decisions, there is no reason to hold that such rationale would not apply to Bankruptcy Court attacks on prior state probate court decisions regarding the management of a ward's estate, especially when the Michigan statute specifically allows for such exclusive jurisdiction.

## II. Defendants' "obligation" did not arise before they were appointed as their mother's fiduciaries or before a Proof of Claim was filed

MCL 700.5429 provides:

14

> (1) A conservator may pay or secure from the estate a claim against the estate or against the protected individual arising before or during the conservatorship upon the presentation of the claim and allowance in accordance with the priorities in subsection (4).

The defendants filed their acceptance of their respective appointments as co-conservators and co-guardians on November 20, 2014 and December 19, 2014. Under the laws of probate, a fiduciary's "duty" to a creditor isn't triggered until a Proof of Claim is filed. MCL 700.5429. Atty. Ackerman, however, filed his purported Proof of Claim on May 11, 2016, more than a year after the subject condo was sold. In other words, the defendants could not have breached a fiduciary duty to the trustee's creditor before he filed his Proof of Claim.

## III. Mr. Hatchett, as the co-guardian and spouse of the debtor, was a fiduciary and thus defendants were legally entitled to entrust the debtor's funds to him.

The Trustee makes great efforts to point out that Frank Hatchett did not have any issue in transferring the funds to Mr. Hatchett for the care of Debtor – his wife whom he took care of on a daily basis – nor would Defendant Ayanna Hatchett been concerned if she had known of the transfer. However, apart from the common-sense aspect of having

Debtor's husband manage the day to day needs of his own wife of 60-plus years, the Trustee's argument neglects to address that Mr. Hatchett was a co-guardian to his wife, the debtor, and thus no liability is incurred from a grant of custody between fiduciaries for the same protected individual.

It must be remembered that, while the defendants' powers were briefly suspended, it was not due to any concern over the abilities or veracity of the conservator, but rather a procedural suspension due to late filing of the accounting pursuant to MCL 700.5418.

MCL 700.1104(e) provides, "Fiduciary" includes, but is not limited to, a personal representative, funeral representative, **guardian,** conservator, trustee, plenary guardian, partial guardian, and successor fiduciary." (emphasis added) As Mr. Hatchett was a fiduciary to his wife as a co-guardian, Defendants were well within their abilities and duties to entrust him, as a fiduciary for Debtor, with the funds. There was no reason to expect that anything nefarious would happen to those funds – and indeed, nothing nefarious did. Regardless, plaintiff simply has no claim against Frank and Ayanna Hatchett, as they properly relied on a fiduciary for Debtor, their own father, a well-respected attorney, who has

loved, cherished, and cared for his wife for the last 60 years – a course of action that did not change one scintilla with the events at issue.

Regardless of the fact that the entrusting of the funds with Mr. Hatchett made both common sense and passed legal muster, MCL 700.5318 allows individuals to deal with such guardians without regard of the proper allocation of such assets, and to assume that such will occur:

> If a third person is dealing with a guardian or is assisting a guardian in the conduct of a transaction, the third person may assume the existence of trust powers and their proper exercise by the guardian without inquiry. The third person is not bound to inquire whether the guardian may act or is properly exercising the power. Unless the third person has actual knowledge that the guardian is exceeding the guardian's powers or improperly exercising them, a third person is fully protected in dealing with the guardian as if the guardian possessed and properly exercised the powers the guardian purports to exercise. A third person is not bound to assume the proper application of estate assets paid or delivered to the guardian. This section does not apply to a third person dealing with a limited guardian.

Thus, even if Defendants had thrown caution to the wind, they were allowed to assume that a fiduciary such as their father, Mr. Hatchett, would properly allocate and disperse such proceeds for Debtors benefit – and he did just that. The transfer of the debtor's share of the proceeds

17

from the sale of the condo to the debtor's husband and co-guardian can't be seen as a breach of fiduciary duty.

IV.     No Breach of Duty in Using the Proceeds from the Florida Property for Mr. Hatchett's Tax Liability or for using the funds for debtor's living expenses for her accustomed standard of living

M.C.L. § 700.1212. Fiduciary relationship, provides:

> (1) A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary. A fiduciary shall observe the standard of care described in section 7803 and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity. With respect to investments, a fiduciary shall conform to the Michigan prudent investor rule.

The Michigan prudent investor rule is embodied in MCL 700.1501 et seq.  MCL 700.1502 provides that "[a] fiduciary shall invest and manage assets held in a fiduciary capacity as a prudent investor would[.] Compliance with the prudent investor rule is determined in light of the facts and circumstances that exist at the time of a fiduciary's decision or action, . . . not by hindsight[, ] [and] [t]he prudent investor rule requires

a standard of conduct, not outcome or performance." MCL 700.1509 (emphasis added). "To be prudent includes acting with care, diligence, integrity, fidelity and sound business judgment." Matter of Green Charitable Trust, 172 Mich. App. at 313.

In the instant case, all of the Debtor's income is derived from her husband's law practice. She is incapable of working herself, and the only way that she can continue in even a fraction of her current lifestyle is if Elbert Hatchett's employer – i.e. the law firm – is afloat. At Elbert's stage of life, there is little hope that could be engaged by a firm or otherwise obtain the amount of income that the Debtor requires to maintain her standard of living.

As noted by the Trustee, approximately $33,000 was used for the Debtor's living expenses. Such an amount is not unreasonable, nor is it indicative of the life of one living "high off the hog." At that level, had the Debtor simply used the $75,000 to pay living expenses, she would be destitute in a little over two years. However, the payment of the taxes pursuant to the 2005 agreement with the government assures that what little capital Debtor has will be maximized and should continue well beyond the two-and-a-half years suggested by the Trustee.

It is clear that the Trustee will not be paying Debtor's bills after the $75,000 ran out; it is Elbert Hatchett and the income derived from his law firm that will continue to fund Debtor, and without this source of income, there will be only the taxpayer left to support her. While this ongoing responsibility pursuant to government agreement since 2005 may not be a de jure liability of Debtor, but is a de facto necessary expense of the Debtor. Without strict compliance with the agreement, the law firm would not exist, and Debtor would have become a ward of the state a decade ago. The reality is that Debtor relies upon the continuing operation of the law firm for her very survival.

It must be noted that the reporting requirements regarding Elbert Hatchett's income are very draconian, and yet he has not missed a single payment or reporting. The government has been satisfied with his efforts and veracity over the last thirteen years, and over a million dollars of taxes have flowed through to the IRS as part of this agreement.

There is simply no reason for Elbert to "run off" with any of Debtor's funds – as noted, they have to be used for Debtor's continued existence as part of this married couples home life. Indeed, it would be almost impossible to do so and not run afoul of the government's

reporting requirements. While only the agreement setting out the parameters is attached to this motion, copies of the reports can be provided to the Court under appropriate seal and protective order as every client of the firm and the respective funds and expenses are noted in the reports and subject to attorney/client privilege. If the court allows such protection for these documents or allows a simple in camera inspection that would protect the interests of the law firm's clients, it would be shown that there is no discrepancy between Elbert's income and the amounts allegedly absconded with – it simply did not happen.

While there are apparently no records of Debtor's "personal expenses" of approximately $33,000, there was no requirement to keep every receipt for groceries, gas, McDonalds, etc for the probate court. The $33,000 figure could easily be amassed for personal expenses by almost anyone. Debtor was allowed to choose her personal reasonable likes and dislikes, and her husband gave her access to do so as part of her everyday living. There is no indication this was improper, frivolous, or that Elbert spent the money on himself. His children, the Co-conservators, properly and correctly relied on their father – Debtor's husband of several decades – to tend to day to day activities in a reasonable and prudent manner –

which he did.  There is no evidence that he did not – just the Trustee's bare assertions.  The Conservators did not violate their fiduciary duty.

Even if allowing Elbert to run the day to day expenses of the Debtor was procedurally improper – which it was not – it would still not require the replacement of the funds by the conservators as the end outcome of the payment of the funds back to the Trustee.  The funds were used for the benefit of the Debtor, administered by a faithful husband, and she received the benefit.  There are no alleged improper expenditures, such as Vegas trips, Casino bills, sports car purchases etc. – all the Trustee alleges is that because Debtor does not have a receipt for every pack of gum that was purchased for Debtor, there must be a nefarious use of the funds.  However, bare assertions cannot create a material fact for which documentary evidence need be used to rebuff.  All that such bald allegations do is create a question of fact.  Without question, Debtor, her husband, and her children will testify that these expenditures were solely for personal living expenses of the Debtor.  Thus, a material question of fact exists for determination by this Court at trial – the case is simply not one for summary judgment.

The $15,000 debt repayment issue is also a proper expense. There is no requirement that a debt be in writing; oral loan contracts are just as binding as the most eloquently drafted agreement. The statute of frauds, MCL 440.2201, does not require a loan to be in writing.

## RELIEF REQUESTED

WHEREFORE, Defendants respectfully request this honorable Court DENY Plaintiff's motion in its entirety.


Respectfully submitted,

By: */s/ Ayanna D. Hatchett*
Counsel for Defendant Ayanna D. Hatchett (Pro Se)
Counsel for Defendant Franklin L. Hatchett
535 Griswold, Ste 2632
Detroit, MI 48226
(313) 324.8300
ahatchett@venjohnsonlaw.com

Dated: May 1, 2018

# Exhibit 1

Approved, SCAO



| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF OAKLAND | ORDER REGARDING APPOINTMENT OF<br>GUARDIAN OF INCAPACITATED INDIVIDUAL | FILE NO.<br><br>2014-358,664-GA |
|---|---|---|

In the matter of Laurastine Hatchett _____ Legally Incapacitated Individual

| Court ORJ | Date of birth | Race | Sex | Current address of incapacitated individual |
|---|---|---|---|---|
| MI630013J | 08/06/1939 | B | Female | 5459 Bristol Parke Dr. Clarkston, MI 48348 |

1. Date of hearing: *9-17-2014*    Judge: Daniel A. O'Brien    P42120

Bar no.

**THE COURT FINDS:**

2. Notice of hearing was given to or waived by all interested persons.

☐ 3. The individual is not in need of a guardian.

☒ 4. Upon the presentation of clear and convincing evidence, the individual named above, by reason of
 ☐ mental illness  ☒ mental deficiency  ☐ chronic use of drugs
 ☐ chronic intoxication  ☒ physical illness or disability  ☐ other: _____
 is impaired to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions, and is an
 incapacitated individual.

☒ 5. Upon the presentation of clear and convincing evidence, appointment of a guardian is necessary as a means of providing
 continuing care and supervision of the individual.

☒ 6. The individual is  ☐ partially  ☒ totally  without the capacity to care for himself/herself.

☐ 7. There is no competent, suitable person willing to act as guardian, and the appointment of a professional guardian is in the
 best interests of the adult. A bond must be filed.

☐ 8. Financial protection is required for the individual.

IT IS ORDERED: *Co-Grdn have Authority to Act Independently,*

9. The petition for appointment of guardian is  ☒ granted.  ☐ denied on the merits.  ☐ dismissed/withdrawn.

☒ 10. Elbert & Ayanna Hatchett _____ , whose address and telephone number are:
 Name (type or print)

| 5459 Bristol Parke Dr. | Clarkston | MI | 48348 | 248-707-6057 |
|---|---|---|---|---|
| Address | City | State | Zip | Telephone no. |

is appointed  ☐ limited  ☒ full  guardian of the adult and shall qualify by filing an acceptance of appointment.
☐ Bond at $ _____ must be filed.
The guardian is not permitted to act until letters of guardianships are issued. After qualification, the guardian shall comply with
all relevant requirements under the law. The guardian has all powers and duties under MCL 700.5314 and 5315.

☐ 11. Upon acceptance of appointment, the guardian shall petition for the appointment of a conservator or for another protective
 order under MCL 700.5401 *et seq.*

☐ 12. The limited guardian shall have only the following powers:



13. If a guardian is appointed, the Michigan Department of State Police shall immediately enter the legally incapacitated
 individual's identifying information in this court order on the law enforcement information network.

☒ 14. IT IS FURTHER ORDERED: The guardian is prohibited from changing the individual's residence from the State of
 Michigan without prior approval of the court. The Guardian ad Litem is released. *G.A.L to Bill Estate,*

*9-17-14* _____    *David A. O'Brien*
Date                Judge   Daniel A. O'Brien   P42120

Attorney name (type or print) _____ Bar no. _____

Address _____ City _____ State ___ Zip _____ Telephone no. _____

Do not write below this line - For court use only

FILED _____ 20 _____

Deputy Register of Probate

MCL 700.1105, MCL 700.5106, MCL 700.5107, MCL 700.5306, MCL 700.5313, MCL 700.5319(1)

PC 631 (9/12) ORDER REGARDING APPOINTMENT OF GUARDIAN OF INCAPACITATED INDIVIDUAL

| | | FILE NO. |
|---|---|---|
| **STATE OF MICHIGAN**<br>**PROBATE COURT**<br>**COUNTY OF OAKLAND** | **ORDER REGARDING APPOINTMENT**<br>**OF CONSERVATOR**<br>☒ **ADULT** ☐ **MINOR** | 2014 358,665 CA |

Estate of  Laurastine Hatchett _____, a protected individual

1. Date of hearing: September 17, 2014 _____ Judge: Daniel A. O'Brien    P42120 _____

Bar no

**THE COURT FINDS:.**

2. Notice of hearing was given to or waived by all interested persons.

☐3. The individual is not in need of a conservator.

☒4. Upon presentation of clear and convincing evidence, the **adult** individual is in need of a conservator because s/he is unable to manage his/her property and business affairs effectively because of
- ☐mental illness.
- ☒mental deficiency.
- ☒physical illness or disability
- ☐chronic use of drugs.
- ☐chronic intoxication.
- ☐confinement.
- ☐detention by a foreign power.
- ☐disappearance.
- ☐other: _____

and ☒a.  the individual has property that will be wasted or dissipated unless proper management is provided, or
☐b.  money is needed for the support, care, and welfare of the individual or those entitled to be supported by the individual and that protection is necessary to obtain or provide the money.

☐5. The individual is mentally competent but because of age or physical infirmity is unable to manage his or her property and affairs effectively and, recognizing this disability, has requested a conservator's appointment.

☐6. Upon presentation of clear and convincing evidence, the **minor** individual is in need of a conservator because the minor
- ☐a.  owns money or property that requires management or protection that cannot otherwise be provided.
- ☐b.  has or may have business affairs that may be jeopardized or prevented by the person's minority.
- ☐c.  needs money for support and education, and protection is necessary or desirable to obtain or provide money.

☐7. It is in the ward's best interests for the guardian to sell or otherwise dispose of the ward's real property or interest in real property. The guardian should be appointed as special conservator to petition for sale of the real estate.

☐8. There is no qualified, suitable individual willing to act as conservator and the appointment of a professional conservator is in the best interests of the adult/minor. A bond must be filed.

☐9. The value of cash and property that is readily convertible into cash in the estate exceeds the limit for administering the estate under MCL 700.3982.
- ☐a.  Bond must be filed.
- ☐b.  Bond is not required under MCL 700.5410(1) because
  - ☐the estate contains no property readily convertible to cash, and the cash is already in a restricted account with a financial institution or will be deposited in a restricted account.
  - ☐the conservator has trust powers pursuant to MCL 487.14401.
  - ☐requiring a bond would impose a financial hardship on the estate.
  - ☐other:

**(SEE SECOND PAGE FOR ORDER)**

Do not write below this line – For court use only

FILED _____ 20 _____

Deputy Register of Probate

MCL 700.1309, MCL 700.5215(a), MCL 700.5314(b), MCL 700.5406, MCL 700.5407, MCL 700.5409, MCL 700.5410, MCL 700.5412, MCL 700.5418, MCL 700.5419, MCR 5.409

PC 640 (9/12) ORDER REGARDING APPOINTMENT OF CONSERVATOR

**IT IS ORDERED:**

10. The petition for conservator is ☒granted. ☐denied on the merits. ☐dismissed/withdrawn.
    The conservator is not permitted to act until letters of conservatorship are issued.

☒11. Franklin and Ayanna Hatchett _____, whose address and telephone number are
Name (type or print)

| | Bloomfield Hills | | 48304 | 248 866-0608 | |
|---|---|---|---|---|---|
| 732 Weybridge& 211 E. Merrill St, #406 | Birmingham | MI | 48009 | 248 707-6057 | is appointed |
| Address | City | State | Zip | Telephone no. | |

☒a. conservator of all assets of the individual's estate.
☐b. limited conservator of the following assets: _____

_____ . The individual retains title to all other assets in the estate.
☐c. special conservator with authority to proceed under MCL 700.5423(3) in order to dispose of real property.

Acceptance of appointment must be filed.

☐ Bond at $ _____ must be filed.

☐$ _____ shall be deposited in a restricted account. (Verification must be filed using form PC 669
pursuant to MCR 5.409[C][4].)

The conservator is not permitted to act until letters of conservatorship are issued. After qualification the conservator shall comply with all relevant requirements under the law.

☐12. The conservator is not required to file an annual account.

☒12. **IT IS FURTHER ORDERED:** The Guardian ad litem is released. G.A.L. to bill Estate. Co-Conservators may act with Independent Authority.

September 17, 2014 _____
Date

_Daniel A O'Brien_ (signature)

Judge    Daniel A. O'Brien    P42120

_____
Attorney name (type or print)    Bar no.

_____
Address

_____
City, state, zip    Telephone no.

I

# Exhibit 2

Approved, SCAO

JIS CODE: AOT

| STATE OF MICHIGAN PROBATE COURT COUNTY OF OAKLAND | ACCEPTANCE OF APPOINTMENT | FILE NO. 14 358 665 -CA |
|---|---|---|

In the matter of  LAURASTINE HATCHETT                                    *Protected Ind.*

1. I have been appointed **Full Co-** CONSERVATOR _____ of the person/estate.
   Type of fiduciary

2. I accept the appointment, submit to personal jurisdiction of the court, and agree to file reports and to perform all required duties.

☐ 3. For a period of _____ days from the date of my appointment, I exclude from the scope of my responsibility the
   not to exceed 91 days

   following real estate or ownership interest in a business entity: _____
   Describe real property or business interest

   _____

   _____

   _____

   _____

   because I reasonably believe the real estate or other property owned by the business entity is or may be contaminated by a

   hazardous substance, or is or has been used in an activity directly or indirectly involving a hazardous substance that could

   result in liability to the estate or otherwise impair the value of property held by the estate.

9-17-14
Date

Signature

ATANNA D. HATCHETT
Name (type or print)

211 E. MERRILL STREET, #406
Address

BIRMINGHAM, MI  48009          (248) 891-9011
City, state, zip               Telephone no.

05/22/1972
Date of birth

| Attorney name (type or print) | Bar no. |
|---|---|
| Attorney address | |
| City, state, zip | Telephone no. |

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

'FILED
Film  November 20      20 14

_Deputy Register of Probate_      /AB

'FILED
Film _____      20 ___

_Deputy Register of Probate_

MCL 700.3601, MCL 700.3602, MCL 700.5214, MCL 700.5301, MCL 700.5307, MCL 700.5412, MCL 700.7202, MCR 5.501

PC 571 (9/10)  ACCEPTANCE OF APPOINTMENT

Approved, SCAO                                                                    JIS CODE: AOT

| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF OAKLAND | ACCEPTANCE OF APPOINTMENT | FILE NO.<br>14 _358_ 6464 _ -GA |
|---|---|---|

In the matter of  LAURASTINE HATCHETT                                    _(Legally Incap'td)_

1. I have been appointed _Full Co-_ GUARDIAN _____ of the person/estate.
   Type of fiduciary

2. I accept the appointment, submit to personal jurisdiction of the court, and agree to file reports and to perform all required duties.

☐ 3. For a period of _____ days from the date of my appointment, I exclude from the scope of my responsibility the
     not to exceed 91 days
     following real estate or ownership interest in a business entity: _____
                                                                      Describe real property or business interest

_____

_____

_____

_____

because I reasonably believe the real estate or other property owned by the business entity is or may be contaminated by a

hazardous substance, or is or has been used in an activity directly or indirectly involving a hazardous substance that could

result in liability to the estate or otherwise impair the value of property held by the estate.

<br>

Date  9/17/14

Signature

AYANNA D. HATCHETT
Name (type or print)

| Attorney name (type or print) | Bar no. | 211 E. MERRILL STREET, #406 |
|---|---|---|
| | | Address |
| Attorney address | | BIRMINGHAM, MI 48009          (248) 891-9011 |
| City, state, zip | Telephone no. | City, state, zip          Telephone no. |
| | | 05/22/1972 |
| | | Date of birth |

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

FILED
Film _November 20_ 20 _14_
      _Lisa ~~Ramsey~~ Daley_ 14B
      Deputy Register of Probate

FILED                          20__
Film _____
     Deputy Register of Probate

MCL 700.3601, MCL 700.3602, MCL 700.5214, MCL 700.5301,
MCL 700.5307, MCL 700.5412, MCL 700.7202, MCR 5.501

PC 571 (9/10) ACCEPTANCE OF APPOINTMENT

# Exhibit 3

Approved, SCAO

JIS CODE: AOT

| STATE OF MICHIGAN PROBATE COURT COUNTY OF OAKLAND | ACCEPTANCE OF APPOINTMENT | FILE NO. 14 258 665 -CA |
|---|---|---|

In the matter of __LAURASTINE HATCHETT__    Protected Ind iv

1. I have been appointed __CONSERVATOR__ of the person/estate.
   Type of fiduciary

2. I accept the appointment, submit to personal jurisdiction of the court, and agree to file reports and to perform all required duties.

☐ 3. For a period of _____ days from the date of my appointment, I exclude from the scope of my responsibility the
   not to exceed 91 days
   following real estate or ownership interest in a business entity: _____
   Describe real property or business interest

_____

_____

_____

_____

because I reasonably believe the real estate or other property owned by the business entity is or may be contaminated by a

hazardous substance, or is or has been used in an activity directly or indirectly involving a hazardous substance that could

result in liability to the estate or otherwise impair the value of property held by the estate.

Date__9/17/14__

Signature_____

Name (type or print) __FRANKLIN L. HATCHETT__

| Attorney name (type or print) | Bar no. |
|---|---|

Address __732 WEYBRIDGE__

| Attorney address | |
|---|---|

City, state, zip __BLOOMFIELD HILLS, MI 48304__    Telephone no. __(248) 866-0308__

| City, state, zip | Telephone no. |
|---|---|

Date of birth __00/00/1962__

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

20____

Filed __Dec 19 2014__

Film _____

Deputy Probate Register

MCL 700.3601, MCL 700.3602, MCL 700.5214, MCL 700.5301,
MCL 700.5307, MCL 700.5412, MCL 700.7202, MCR 5.501

PC 571 (9/10) ACCEPTANCE OF APPOINTMENT

**STATE OF MICHIGAN**
**PROBATE COURT**
**COUNTY OF OAKLAND**

**ACCEPTANCE OF APPOINTMENT**

**FILE NO.**

**2014-358,664-GA**

In the matter of Laurastine Hatchett

Legally Incapacitated Individual

1. I have been appointed Full Co-Guardian _____ of the person/estate.
   Type of fiduciary

2. I accept the appointment, submit to personal jurisdiction of the court, and agree to file reports and to perform all required duties.

☐ 3. For a period of _____ days from the date of my appointment I exclude from the scope of my responsibility the
   not to exceed 91 days
   following real estate or ownership interest in a business entity: _____
   Describe real property or business interest

_____

_____

_____

_____

because I reasonably believe the real estate or other property owned by the business entity is or may be contaminated by a

hazardous substance, or is or has been used in an activity directly or indirectly involving a hazardous substance that could

result in liability to the estate or otherwise impair the value of property held by the estate.

Date

x _____
Signature

Elbert L. Hatchett
Name (type or print)

5459 Bristol Parke Dr.
Address

Clarkston, Mich.
City, state, zip

7/23/36
Date of birth

Attorney name (type or print)         Bar no.

Attorney address

City, state, zip                      Telephone no.

Telephone no.

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line – For court use only

FILED Dec 18 20 14

_____
Deputy Register of Probate

MCL 700.3601, MCL 700.3602, MCL 700.5214, MCL 700.5301,
MCL 700.5307, MCL 700.5412, MCL 700.7202, MCR 5.501

PC 571 (9/10) ACCEPTANCE OF APPOINTMENT
ST02/ET/T

# Exhibit 4



RECEIVED
NOV 02 2006
Ruth Johnson Register of Deeds
Oakland County, MI

LBER 38342 PG145

269900
LIBER 38342 PAGE 145
$37.00 MORTGAGE
$4.00 REMONUMENTATION
11/03/2006 01:30:48 P.M.   RECEIPT# 124890

PAID     RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

## MORTGAGE

THIS MORTGAGE is made on October 30, 2006, by LAURESTINE W. HATCHETT, a married woman, whose address is 285 W. Hickory Grove Road, Bloomfield Hills, Michigan 48302 ("Mortgagor"), unto ALAN ACKERMAN, a married man, whose address is 100 Long Lake Road, Suite 210, Bloomfield Hills, Michigan 48304 ("Lender" or "Mortgagee").

To secure the payment of all sums now or in the future owing under a certain Promissory Note ("Note") in the original principal amount of Eight Hundred Forty Thousand and 00/100 Dollars ($840,000.00) (the "Indebtedness"), executed and delivered by Mortgagor and her husband, Elbert L. Hatchett, to Mortgagee on even date, as well as any renewals, modifications, extensions or replacements, together with the obligations of Mortgagor under this Mortgage, Mortgagor mortgages and warrants to Mortgagee, its successors and assigns, all of the real estate described in Exhibit A attached hereto.

TOGETHER with all buildings, structures and improvements now or hereafter constructed, erected, installed or placed in or upon the real estate, and all replacements and additions, and all and singular, the tenements, hereditaments and appurtenances belonging or in anywise appertaining, and the reversion or reversions, remainder or remainders, and also all the estate, right, title, interest, property, claim and demand whatsoever of the Mortgagor, of, in and to the same and of, in and to every part and parcel;

TOGETHER with all the rents, issues and profits and any present or future lease or rights to income (whether pursuant to lease or otherwise) growing out of the use and/or occupancy of the real estate, which are by this Mortgage specifically assigned, transferred and set over to the Mortgagee;

TOGETHER with all right, title and interest of the Mortgagor, if any, in and to the land lying in the bed of any street, road, avenue or alley, opened, proposed, vacated or to be vacated in front of, behind, adjoining or abutting the real estate, to the centerline and in and to any strips and gores adjoining the real estate;

TOGETHER with all easements, rights, privileges and licenses relating to the real estate;

195616

O.K. - L.T.

METROPOLITAN

L38342 PG146

TOGETHER with all machinery, apparatus, equipment, appliances, floor covering, furniture, furnishings, supplies, materials, fittings, fixtures and personal property of every kind and nature whatsoever, now or hereafter located in or upon, affixed to or intended for use in or upon the real estate (whether stored thereon or elsewhere), or any part, now owned or hereafter acquired by Mortgagor, and used or usable in connection with any present or future operation or maintenance of the real estate, regardless of their classification as fixtures or personal property, and all replacements ("Equipment"), including, but without limiting the generality, all heating, lighting, ventilating and power equipment, pipes, ducts, pumps, tanks, compressors, engines, motors, conduits, plumbing and cleaning equipment, fire-extinguishing systems, refrigerating and ventilating apparatus, air-cooling and air conditioning apparatus, gas, water and electrical equipment, elevators, escalators, attached cabinets, shelving, partitions, carpeting, communications equipment and all of the right, title and interest of Mortgagor in and to any equipment which may be subject to any title retention or security agreement superior in lien to the lien of this Mortgage. All Equipment shall be deemed part and parcel of the real estate, appropriated to the use of the real estate and, whether affixed or annexed thereto or not, shall for the purpose of this Mortgage be deemed conclusively to be real estate and mortgaged;

TOGETHER with any and all awards or payments, including interest, and the right to receive the same which may be made with respect to any of the real estate as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, or decrease in the value of, the real estate, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by Mortgagee and the costs and disbursements incurred by Mortgagee in connection with the collection of the award or payment. Mortgagor shall execute and deliver, from time to time, such further instruments as may be requested by Mortgagee to confirm such assignment to Mortgagee of any award or payment.

Any reference to the "Premises" or the "Property" shall be deemed to apply to the real estate and any and all other property and items, including the Equipment, covered by this Mortgage and described in the granting clauses, unless the context shall require otherwise.

And the Mortgagor for itself and its heirs, executors, administrators, representatives, successors and assigns, hereby covenants and agrees with the Mortgagee, its successors and assigns, as follows:

1.    **TITLE.** At the time of the execution and delivery of this Mortgage, Mortgagor is well seized of the mortgaged real estate in fee simple, free from all liens, encumbrances and first lien charges whatsoever, except for easements, restrictions and rights of way of record and the lien for taxes and assessments not yet due and payable.

2.    **LIENS.** Mortgagor shall permit no lien, encumbrance or charge of any kind to accrue and remain on the Premises or any part, or the improvements, without

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

L:38342 P6147

Mortgagee's prior written consent.

3. **PAYMENT OF DEBT.** Mortgagor will pay the debt evidenced by the Note, in accordance with its terms, as well as any renewals, modifications, extensions, or replacements, and will pay any other loans or advances made by Mortgagee to Mortgagor and any other debt secured in accordance with their respective terms. All the covenants, conditions and agreements contained in the (i) Note, and (ii) any and all of the documents other than the Note or this Mortgage now or hereafter executed by the Mortgagor and/or others and by or in favor of Mortgagee, which wholly or partially secure or guaranty payment of the Note, are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein.

4. **INSURANCE.** Mortgagor shall insure all buildings and improvements erected and to be erected on the real estate for the benefit of Mortgagee against loss or damage by the perils covered by standard fire insurance policies with vandalism, malicious mischief and extended coverage endorsements, and shall obtain such other insurance as may from time to time be reasonably required by Mortgagee. All insurance shall be in amounts, forms and with companies approved by Mortgagee, and, regardless of the types or amounts of insurance required and approved by Mortgagee, all such policies shall provide that they may be canceled only on thirty (30) days' written notice to Mortgagee. Mortgagor shall assign and deliver to Mortgagee all such policies of insurance as collateral and further security for the payment of the debts secured by this Mortgage, with loss payable to Mortgagee pursuant to mortgagee clauses, without contribution, satisfactory to Mortgagee. In the event of the foreclosure of this Mortgage, any and all insurance policies in force or written during the pendency of the proceedings or during the period of redemption from foreclosure proceedings shall, if there is no redemption, become the property of the Purchaser at any sale under the foreclosure proceedings. After the right of redemption has expired, Mortgagor and its successors in title and interest shall have no right, title or interest in and to the insurance policies or insurance or their cash surrender value. In case of loss, Mortgagee is authorized and empowered, at its option, to collect and receive the proceeds from any policy and, after deduction from the proceeds of any expenses incurred by it in the collection or handling, to apply the net proceeds, at is election, either toward payment of the unpaid balance of the Note, whether then matured or to mature in the future, to be applied on the last maturing installments in the inverse order of their maturity, or to the restoration of the property damaged, provided that Mortgagor is not then or at any time during the course of restoration in default under the Note, this Mortgage and provided, further, that Mortgagor complies with all requirements for application of the proceeds to restoration of the property damaged as Mortgagee, in its sole discretion, may establish. Any surplus proceeds remaining after completion of the restoration shall be applied toward payment of the unpaid balance of the Note, whether then matured or to mature in the future, to be applied on the last maturing installments.

5. **TAXES.** Mortgagor shall pay all taxes, assessments, water rates and other charges, encumbrances and liens (including prior liens), now existing or hereafter assessed or levied against the Premises, or any part, at such time as they become due

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

LIBER 38342 PAGE 148

and payable and before the date when they become delinquent. Mortgagor shall deliver to Mortgagee receipts or other evidence for the timely payment of these items. Mortgagor, in its own name and at its own expense, may contest any tax, assessment, charge, encumbrance or lien, provided that Mortgagor shall bond over such liens to Mortgagee's satisfaction if Mortgagee requests.

6. **MAINTENANCE AND REPAIRS.** Mortgagor shall (a) maintain the Premises in good condition and repair, including all on-site paved parking areas, roadways, sidewalks and landscaped areas, if any, not commit or suffer any waste of the Premises, and comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises; (b) promptly repair, restore, replace or rebuild any part of the Premises now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in Article 10; and (c) not initiate, join in or consent to any change in any restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Premises, or any part, without Mortgagee's prior written consent.

7. **REPRESENTATIONS.** Any representation contained in this Mortgage shall be deemed a warranty, and breach of any warranty shall be a default entitling Mortgagee to accelerate the maturity of the Indebtedness secured, in accordance with the provisions of Article 9.

8. **REMOVAL OF IMPROVEMENTS AND EQUIPMENT.** No building, improvement or other property now or hereafter covered by the lien of this Mortgage shall be transferred, conveyed, removed, demolished or materially altered without Mortgagee's prior written consent, except that Mortgagor may, without consent, remove and dispose of property covered by the lien of this Mortgage in the ordinary course of its business, provided that such property is promptly replaced with comparable property of equal or greater value.

9. **ACTS OF DEFAULT.** The entire debt, together with interest, shall become due and payable and this Mortgage shall become subject to foreclosure at the option of Mortgagee, without notice, except as otherwise provided:

(a) In the event of Mortgagor's default in the due and punctual performance of any of the terms contained in this Mortgage or in the event of Mortgagor's default under the Note; or

(b) Upon Mortgagee's election to accelerate the maturity of the Note under the provisions of the Note or of any other instrument which may be held by Mortgagee as additional security for the Note; or

(c) After default in the payment of any installment of principal and/or interest on the debt secured; or

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

38342 P149

(d)      After default in the payment, when due, of any tax, water rate, assessment, encumbrance or other charge; or

(e)      After default in assigning or delivering or keeping in force the policies of insurance as required or referred to or in reimbursing Mortgagee for premiums paid on insurance; or

(f)      After default in furnishing a statement of the amount due on this Mortgage and whether any off-sets or defenses exist against the mortgage debt; or

(g)      Upon either the (i) filing of formal charges under, or (ii) violation by Mortgagor of, any federal, state or local statute, law or ordinance for which forfeiture of the Premises or any property mortgaged is a potential penalty; or

Provided, however, that in the event of a non-monetary default, Mortgagor shall have a thirty (30) day period after receipt of written notice of such default from Mortgagee in which to cure any such non-monetary default before the debt becomes due and payable and this Mortgage becomes subject to forfeiture.

10.    **EMINENT DOMAIN.** In the event of a partial taking of any single parcel, any award or payment may, at the option of the Mortgagee, be retained and applied by Mortgagee, without penalty or surcharge, toward payment of the unpaid balance of the Note, to be applied upon the last maturing installments in the inverse order of their maturity, or be paid over wholly or in part to or for the benefit of Mortgagor, subject to its compliance with such requirements as Mortgagee, in its sole discretion, may establish for the application of such award or payment, or part, for the purpose of altering, restoring or rebuilding any part of the Premises which shall have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Mortgagee. Mortgagee shall not be obligated to see to the application of any amount paid over to Mortgagor, and if, prior to the receipt by Mortgagee of the award or payment, the Premises shall have been sold on foreclosure of this Mortgage; Mortgagee shall have the right to receive the award or payment, to the extent of any deficiency judgment on this Mortgage which shall have been sought and recovered or denied and the reasonable attorney's fees, costs and disbursements incurred by Mortgagee in connection with the collection of the award or payment. Any award or payment for a total taking of any single parcel shall be paid over solely to the Mortgagee and applied by it on the unpaid principal balance of the Note, without penalty or surcharge, and shall be applied on the last maturing installments in the inverse order of their maturity.

11.    **REMEDIES.** Mortgagee shall have the right from time to time to sue for any amounts due hereunder or under the Note, whether interest, installments of principal, damages for failure to pay principal or any installment, taxes, or any other debt required to be paid under the terms thereof, as they become due, without regard to whether or not the debt secured by the Mortgage shall be due and without prejudice to the right of Mortgagee

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

LIBER 38342 PAGE 150

thereafter to bring an action of foreclosure, or other actions, for a default or defaults by Mortgagor existing at the time such earlier action was commenced. The rights of Mortgagee arising under the clauses and covenants contained in this Mortgage shall be separate, distinct and cumulative, and none of them shall be in exclusion of the others. No act of Mortgage shall be construed as an election to proceed under any one provision to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding.

12. **NON-WAIVER.** Any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms of this Mortgage shall not be deemed to be a waiver of any of the terms, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon Mortgagor's strict performance of any and all of the terms of this Mortgage to be performed by Mortgagor. The Mortgagor shall not be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor, or of any other person so obligated, to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligations secured, or by reason of any agreement or stipulation between any subsequent owner or owners of the Premises and the Mortgagee extending the time of payment or modifying the terms of the Note or the Mortgage without first having obtained the consent of Mortgagor or such other person, and in any event, Mortgagor shall continue liable to make the payments according to the terms of any agreement of extension or modification unless expressly released and discharged in writing by Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the Premises, Mortgagee may release the obligation of anyone at any time liable for any of the debt secured or any part of the security held for the debt, and may extend the time of payment or otherwise modify the terms of the Note or Mortgage without, as to the security of the remainder, in anywise impairing or affecting the lien of this Mortgage or the priority of the lien as security for the payment of the debt as it may be so extended or modified, over any subordinate lien; and the holder of any subordinate lien shall have no right to terminate any lease affecting the Premises, whether or not such lease is subordinate to this Mortgage. The Mortgagee may resort for the payment of the debt to any other security held by Mortgagee in such order and manner as Mortgagee may elect.

13. **POWER OF SALE.** If there is a default in the payment of any of the sums of money to be paid by Mortgagor to Mortgagee under the Note or this Mortgage, or if Mortgagor is in default in the performance of any of its covenants, obligations, undertaking or agreements contained in the Note or this Mortgage, then, and in such case, it shall be lawful for Mortgagee, its successors or assigns, and it or they are authorized and empowered, to sell or cause to be sold the Premises, under applicable statute, and out of the proceeds of the sale to retain the principal and interest of all sums then due to Mortgagee, as well as the costs and charges of the sale and the attorney fee provided by statute, render the surplus moneys (if there are any) to Mortgagor, its successor or assigns. Mortgagor understands that the statute pertaining to foreclosure by advertisement provides a means of foreclosure of this Mortgage and sale of the Premises without hearing in any court or notice, other than as provided for herein. If Mortgagee elects to foreclose

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

LIBER 38342 PG 151

this Mortgage by advertisement, notice shall be given to Mortgagor in the manner provided for in this Mortgage. Mortgagor specifically waives the right to any notice other than as provided for in this Mortgage and the right to a judicial hearing in the event of foreclosure by advertisement.

14. **INSPECTION.** Mortgagee and any persons authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times during normal business hours and upon notice to Mortgagor.

15. **CERTIFICATION OF DEBT.** Mortgagor, upon request made either personally or by mail, shall certify in writing, acknowledged to Mortgagee, or to any proposed assignee of this Mortgage, the amount of principal and interest then secured by this Mortgage and whether any off-sets or defenses exist against the mortgage debt. The certification shall be delivered to Mortgagee within ten (10) days of a request.

16. **TRANSFER.** Mortgagee, at its option, may declare the indebtedness immediately due and payable upon any sale or encumbrance, voluntary or involuntary, by Mortgagor of any interest in the Premises, without Mortgagee's written consent. No sale or transfer of the Premises, with or without Mortgagee's consent, no forbearance on the part of Mortgagee, and no extension of the time for the payment of the indebtedness given by Mortgagee, either to Mortgagor or its successors in interest, shall operate to release, discharge, modify, change or affect the original liability of Mortgagor herein either in whole or in part, and Mortgagee may deal with any successor in interest with reference to this Mortgage, the Note and indebtedness hereby secured, in the same manner as with Mortgagor, without in any manner releasing, voiding or discharging Mortgagor's liability hereunder or for the indebtedness hereby secured.

17. **EXCESS INTEREST.** Notwithstanding any provision, it is not intended by this Mortgage to impose upon Mortgagor any obligation to pay interest in excess of the maximum rate of interest permitted by law, and any interest which exceeds the maximum rate of interest shall automatically be applied in reduction of principal due on the Note to the extent of the excess.

18. **NOTICE.** Every provision for notice and demand or request shall be deemed fulfilled by telegraphic or written notice and demand or request (a) personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs, representatives, successors or assigns, (b) mailed by U.S. Certified Mail, Return Receipt Requested, by depositing it in any U.S. post office or mail box, enclosed in a post-paid envelope addressed to such person or persons, or their heirs, representatives, successors or assigns, at his or their address or addresses last known to Mortgagee, or (c) delivered to such person or persons, or their heirs, representatives, successors or assigns, at such address or addresses by Federal Express or comparable expedited delivery service. Notices given under subsections (a) and (c) shall be effective upon delivery, and notices given under subsection (b) shall be effective three (3) days after mailing. Refusal to accept delivery shall be deemed conclusive but not exclusive evidence of delivery.

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

LIBER 38342 PAGE 152

19.  **APPLICABLE LAW.** Any proceedings for the foreclosure of this Mortgage or the enforcement of any rights conferred on Mortgagee under the terms hereof shall be governed by the laws of the State of Michigan.

20.  **DEFINITIONS.** Wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word "Mortgagor" shall mean "Mortgagor and/or any individual mortgagor and/or any subsequent owner or owners of the Premises", the word "Mortgagee" shall mean "Mortgagee or any subsequent holder or holders of this Mortgage", and the word "person" shall mean "an individual, corporation, limited liability company, partnership or unincorporated association." Whenever and wherever the singular number is used herein, it shall include the plural and vice-versa, as the context may require, and the pronouns "he" or "it" referring to the Mortgagor shall also include "he", "she", "they" or "it" as the context may require.

21.  **PARAGRAPH HEADINGS.** The paragraph headings are inserted merely for convenience and shall not modify the terms of this instrument in any respect.

22.  **SEPARABILITY OF PROVISIONS.** The invalidity of any of the covenants, phrases or clauses in this Mortgage shall not affect the remaining portions, and this Mortgage shall be construed as if such invalid covenant, phrase or clause had not been contained.

(Signature and Notary on the Following Page)

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

LIBER 38342 PG 153

Mortgagor has executed this Mortgage the day and year first above written.

Signed:

_Laurestine W. Hatchett_
Laurestine W. Hatchett

_Elbert L. Hatchett_
Elbert L. Hatchett, her husband as to any homestead rights to the property hereunder.

STATE OF MICHIGAN )
)ss.
COUNTY OF _OAKLAND_ )

The foregoing instrument was acknowledged before on October _30th_, 2006, by Laurestine W. Hatchett, a married woman, who acknowledged this to be her free act and deed. _and Elbert L. Hatchett, her husband_

_Marcia A. Lawless_
Notary Public
County of _____, State of Michigan
My commission expires:
Acting in _____ County

MARCIA A. LAWLESS
Notary Public, Macomb County, MI
My Commission Expires 07-15-12
Acting in the County of _Oakland_

Drafted by and when recorded return to:
Scott I. Mirkes, Esq.
Jackier Gould
Suite 200, 121 West Long Lake Rd.
Bloomfield Hills, MI 48304-2719
(248) 642-0500
J32776\00077932.DOC

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44

ℛℭ38342 №54

## EXHIBIT A
## LEGAL DESCRIPTION

Land located in the Township of Bloomfield, County of Oakland, State of Michigan, more particularly described as follows:

Part of the East 1/2 of the Southeast 1/4 of Section 9, Town 2 North, Range 10 East, Township of Bloomfield, Oakland County, Michigan, described as: Beginning at a point bearing West 978.75 feet from the East 1/4 corner of Section 9, which is the intersection of the centerline of Hickory Grove Road with the centerline of a 60 foot private road; thence East along center line of Hickory Grove Road; 383.75 feet; thence South 38 degrees 40 minutes 00 seconds West 323 feet; thence West 244.60 feet; thence North 13 degrees 53 minutes 10 seconds East along the centerline of said 60 foot road, 260 feet to the point of beginning, except that part taken for Orange Lake Road.

Tax Item No. 19-09-400-004 SE¼
More commonly known as: 285 W. Hickory Grove Road, Bloomfield Hills, MI 48302

Received for Filing Oakland County Clerk 2014 JAN 16 PM 03:44


<p style="writing-mode: vertical-rl;">Received for Filing Oakland County Clerk 2014 AUG 01 PM 02:47</p>

## NEGOTIABLE PROMISSORY NOTE

$840,000.00
Bloomfield Hills, Michigan



October 30, 2006

For value received, the undersigned (collectively the "Borrower"), promises to pay to the order of ALAN ACKERMAN, a married man ("Lender"), the aggregate amount of principal of Eight Hundred Forty Thousand and 00/100 Dollars ($840,000.00) (the "Indebtedness"), together with interest on any part thereof at any time unpaid at the rate of five percent (5.00%) per annum ("Effective Interest Rate") payable in lawful money of the United States of America, as follows:

Payments of interest only shall be paid in twenty-four (24) monthly installments of Three Thousand Five Hundred and 00/100 ($3,500.00) each, commencing on December 1, 2006, which first payment shall also include interest from the date of this Note through November 1, 2006 in the amount of Two Hundred Nineteen and 18/100 Dollars ($219.18), and continuing on the first day of each month thereafter through November 1, 2008 with a final payment of Eight Hundred Forty Thousand ($840,000.00), plus any accrued and unpaid interest, due on November 1, 2008 (the "Initial Maturity Date").

Notwithstanding the foregoing, Borrower shall have the option to extend the term of this Note for an additional two (2) years provided that Borrower notifies Lender in writing at least ten (10) days prior to the expiration of the Initial Maturity Date of its election to extend the term of this Note. If Borrower elects to extend the term of this Note, the following repayment terms shall apply:

Payments of interest only shall be paid in twenty-four (24) additional monthly installments of Three Thousand Five Hundred and 00/100 ($3,500.00) each, commencing on December 1, 2008, and continuing on the first day of each month thereafter through and including November 1, 2010, with a final payment of Eight Hundred Forty Thousand and 00/100 Dollars ($840,000.00), plus any accrued and unpaid interest, due on November 1, 2010 (the "Extended Maturity Date").

Payment shall be made to the following address (or at such other place as the holder of this Note may designate in writing):

Alan Ackerman
100 Long Lake Road, Suite 210
Bloomfield Hills, MI 48304

Borrower shall have the right at any time to prepay all or any part of this Note, without penalty. Any partial prepayment shall be applied against the principal amount outstanding hereunder and the same shall not extend or postpone the due date of any

subsequent required monthly payment(s) hereunder or change the amount of any such payment(s).

If Borrower fails to make any payment due under this Note as and when due and such event of default continues without cure for a period of thirty (30) days following written notice from Lender to Borrower, then Lender may declare the unpaid balance of this Note to be immediately due and payable without further notice to Borrower and upon any such declaration, without further notice, the Note shall become and shall be immediately due and payable, anything in this Note to the contrary notwithstanding.

If Borrower fails to meet any of its non-monetary obligations under this Note and such event of default continues without cure for a period of thirty (30) days following written notice from Lender to Borrower, then Lender may declare the unpaid balance of this Note to be immediately due and payable without further notice to Borrower and upon any such declaration, without further notice, the Note shall become and shall be immediately due and payable, anything in this Note to the contrary notwithstanding.

Borrower agrees that the Lender, in its discretion, may extend the time for payment of the debt evidenced hereby, in whole or in part, at any time, voluntarily and/or at the request of Borrower, without in any way otherwise affecting the liability of Borrower.

If the indebtedness is not fully paid in accordance with the terms of this Note, Borrower shall pay the Lender all reasonable costs, expenses, and fees incurred by Lender to collect the indebtedness, including (but not limited to) reasonable attorneys' fees; such costs, expenses, and fees shall be added to, and be a part of, the indebtedness, except that reimbursement thereof from Borrower shall be due immediately upon incurrence by the Lender.

No delay or failure of the Lender in exercising any right, remedy, power, or privilege under this Note shall affect such right, remedy, power, or privilege, nor shall any single or partial exercise thereof preclude the exercise of any other right, remedy, power, or privilege. No delay or failure of the Lender at any time to demand strict adherence to the terms of this Note shall be deemed to constitute a course of conduct inconsistent with the Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Note. Neither the failure by the Lender to enforce its rights under this Note, nor the waiver by the Lender of any breach or violation of the terms of this Note by Borrower, nor the extension or indulgence by the Lender of any obligations of the Borrower, shall be construed so as to (a) permit any further waiver, breach, extension, or indulgence, or (b) in any way abrogate or affect Lender's rights and Borrower's obligations under this Note.

This Note is secured by a Mortgage by and between the Lender and Laurestine W. Hatchett of even date herewith.

This Note and the exercise of all rights and remedies hereunder shall be governed by, construed, interpreted, and enforced in accordance with the internal laws of the State of Michigan, without application of principles of conflicts of law.

Received for Filing Oakland County Clerk 2014 AUG 01 PM 02:47

Received for Filing Oakland County Clerk 2014 AUG 01 PM 02:47

Notwithstanding anything to the contrary contained herein, the effective rate of interest on the obligation evidenced by this Note shall not exceed the lawful maximum rate of interest to be paid. Without limiting the generality of the foregoing, in the event the interest charged hereunder results in an effective rate of interest higher than that lawfully permitted to be paid, then such charges shall be reduced by the sum sufficient to result in an effective rate of interest no greater than the maximum effective rate of interest permitted, and any amount which would exceed the highest lawful rate already received and held by the Lender shall be applied to a reduction of principal and not to the payment of interest.

Executed on October 30, 2006

BORROWER:

_____
Elbert L. Hatchett

_____
Laurestine W. Hatchett
Husband and wife

J:\2776\3\00077829.DOC

## EXHIBIT A
## LEGAL DESCRIPTION

Land located in the Township of Bloomfield, County of Oakland, State of Michigan, more particularly described as follows:

Part of the East 1/2 of the Southeast 1/4 of Section 9, Town 2 North, Range 10 East, Township of Bloomfield, Oakland County, Michigan, described as: Beginning at a point bearing West 978.75 feet from the East 1/4 corner of Section 9, which is the intersection of the centerline of Hickory Grove Road with the centerline of a 60 foot private road; thence East along center line of Hickory Grove Road; 383.75 feet; thence South 38 degrees 40 minutes 00 seconds West 323 feet; thence West 244.60 feet; thence North 13 degrees 53 minutes 10 seconds East along the centerline of said 60 foot road, 260 feet to the point of beginning, except that part taken for Orange Lake Road.

Tax Item No. 19-09-400-004
More commonly known as: 285 W. Hickory Grove Road, Bloomfield Hills, MI 48302

Received for Filing Oakland County Clerk 2014 AUG 01 PM 02:47

# Exhibit 5

Received for Filing Oakland County Clerk 2013 SEP 26 AM 08:14

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

LAURESTINE W. HATCHETT, Vendor and
ALAN T. ACKERMAN, Assignee, a married
man,

        Plaintiffs,

vs                                              Case No.: 12-125013-CH

ANGELA E. WHITE and                             THE HONORABLE
ANTHONY SMITH, husband and wife,                MICHAEL WARREN

        Defendants.
_____/

DARIUS W. DYNKOWSKI (P52382)
ACKERMAN ACKERMAN & DYNKOWSKI
Attorney for Plaintiffs
100 W. Long Lake Road, Suite 210
Bloomfield Hills, MI 48304/(248) 537-1155

PAUL B. MOLENDA (P39929)
Molenda Law Group
Attorney for Defendants
39111 West Six Mile Road
Livonia, MI 48152/(313) 263-1610

SIMON, PLC
JOHN W. POLDERMAN (P65720)
FRANK R. SIMON (P54731)
Court Appointed Receiver
37000 Woodward Avenue, Suite 250
Bloomfield Hills, MI 48304/(248) 720-0290

**JUDGMENT FOR ADDITIONAL DEFICIENCY AMOUNT UNDER
JUDGMENT OF LAND CONTRACT FORECLOSURE DATED JULY 25, 2012**

        At a session of said Court, held in the
        Courthouse Tower, City of Pontiac, County of
        Oakland, State of Michigan, on MICHAEL WARREN 9/25/13

        PRESENT: HON. _____
                          CIRCUIT COURT JUDGE

        WHEREAS, Plaintiffs having filed a Motion, the Court being

otherwise fully advised in the premises;

WHEREAS, a Partial Deficiency Judgment in the amount of $646,759.48 was entered against Defendants, Angela E. White and Anthony Smith, husband and wife, jointly and severally, on May 21, 2013. That Partial Judgment remains in effect and payable, in addition to the amounts contained in this Judgment.

WHEREAS, pursuant to the May 21, 2013 Order Confirming Partial Deficiency Amount, this Court retained jurisdiction of this matter for purposes of conducting a hearing on the disputed costs and to amend the Judgment in the event that when Defendants leave the property, Plaintiffs may include any damage, costs or waste that cannot be determined at that time.

WHEREAS, at said hearing on September 25, 2013, at the scheduled hearing on remaining deficiency amounts, for which neither Defendant appeared, the following was confirmed:

IT IS HEREBY ORDERED that Default Judgment for the remaining deficiency amount of One Hundred Fifty Seven Thousand Six Hundred Six and 20/100 ($157,686.20) Dollars is hereby entered against Defendants, Angela E. White and Anthony Smith, husband and wife, jointly and severally.

IT IS FURTHER ORDERED that the amount of the Judgment is comprised of the following matters which this Court finds were intentionally, willfully and fraudulently destroyed, damaged and/or made to fall into disrepair by Defendants, Angela E. White and Anthony Smith:

Received for Filing Oakland County Clerk 2013 SEP 26 AM 08:14

Received for Filing Oakland County Clerk 2013 SEP 26 AM 08:14

| | |
|---|---:|
| Sprinkler System – (Not winterized causing entire system failure) | $ 9,235.00 |
| Kitchen Cabinetry – (Destroyed) | 22,343.66 |
| Hardwood Floors (Destroyed) | 4,500.00 |
| Appliances (Destroyed) | 10,371.00 |
| Window Screens Damaged (Destroyed or Removed) | 8,495.00 |
| Lift Pump (Destroyed) | 26,734.95 |
| Hot Water Tank (Disconnected/Removed) | 4,407.35 |
| Phone Lines (Cut requiring entire replacement) | 895.00 |
| Landscaping (Removed/Destroyed) | 19,600.00 |
| Pool Repair (Modified and inoperable) | 4,000.00 |
| Dumpster (Waste Removal) | 3,650.00 |
| Carpeting (Removed from House) | 16,000.00 |
| Repair holes in walls/repaint | 14,000.00 |
| Receiver | 11,554.24 |
| Water Bills (Outstanding Balance Unpaid and attached to Property) | 1,900.00 |
| | $157,686.20 |

IT IS FURTHER ORDERED that the above amount is due within seven days of entry of this Order with additional interest from April 23, 2013 at the yearly rate of five (5%) percent and additional penalties and interest, if any, on delinquent taxes and any tax costs.

CIRCUIT COURT JUDGE

F:\hatchett\Hickory Grove - Sale 2010\Judgment for Deficiency Amount Under Judgment of Land Contract
Foreclosure Dated 7-25-12.wpd

# Court Explorer

## Register of Actions      ← Go Back

**Case Number**
2012-125013-CH
**Entitlement**
HATCHETT LAURESTINE W vs. WHITE ANGELA E
**Judge Name**
MICHAEL WARREN
**Case E-Filed**
YES
**Case Filed**
02/16/2012
**Case Disposed**
07/25/2012

| Date | Code | Desc |
|------|------|------|
| 09/27/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 09/26/2013 | JGM | JUDGMENT FILED FOR DEFICIENCY |
| 09/25/2013 | OTH | JUDGMENT FOR ADDITIONAL DEFICIENCY PLACED ON |
| 09/25/2013 | | THE RECORD. |
| 09/13/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 09/13/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 09/04/2013 | M | MOTION FOR ENTRY OF JUDGMENT AGAINST GARNISHEEGRTD |
| 09/04/2013 | JGM | JUDGMENT FILED AGNST GARN DFT DEDICATED HOME OWNERS |
| 09/04/2013 | M | MOTION FOR ALT SERVICE GRANTED |
| 09/04/2013 | OAS | ORDER FOR ALTERNATIVE SERVICE FILED |
| 08/28/2013 | OTH | SUPPLEMENTAL MATERIAL RE MTN FOR ALT SERV FILED |

| Date | Code | Desc |
|------|------|------|
| 08/28/2013 | MPR | MOTION PRAECIPE FILED FOR 09042013 JUDGE 10 |
| 08/28/2013 | MTN | MOTION FILED PLF ENTRY JGM/NOH/POS |
| 08/23/2013 | DSL | DISCLOSURE FILED DEDICATED HOME OWNERSHIP COUNCIL |
| 08/21/2013 | M | MOTION FOR ALTERNATE SERVICE OF DEF - TUA |
| 08/16/2013 | AMC | AMENDED COMPLAINT FILED |
| 08/14/2013 | M | MOTION FOR LEAVE TO AMD COMPLAINT FOR |
| 08/14/2013 | | FORECLOSURE OF LAND CONTRACT, GRTD |
| 08/14/2013 | ORD | ORDER FILED GRNT MTN LV AMD COMPLT |
| 08/07/2013 | MPR | MOTION PRAECIPE FILED FOR 08142013 JUDGE 10 |
| 08/07/2013 | MPR | MOTION PRAECIPE FILED FOR 08142013 JUDGE 10 |
| 08/07/2013 | MPR | MOTION PRAECIPE FILED FOR 08212013 JUDGE 10 |
| 08/07/2013 | MTN | MOTION FILED FOR LEAVE TO AMD COMPLAINT/NOH/POS/PLF |
| 08/07/2013 | MTN | MOTION FILED PLF/EXPARTE SH CAUSE |
| 08/07/2013 | MSV | MOTION FOR ALT SERVICE FILED /NOH/POS |
| 07/31/2013 | M | MOTION TO SCH EVID HRG FOR FINAL DETERMINATION |
| 07/31/2013 | | OF DEFICIENCY AMT, GRTD |
| 07/31/2013 | APR | DATE SET FOR EVIDNT HRG ON 09252013 01 30 PM Y 10 |
| 07/31/2013 | ORD | ORDER FILED GRNT PLF MTN SCHED EVID HRG |
| 07/30/2013 | NTC | NOTICE FILED JGM LIEN |
| 07/30/2013 | NTC | NOTICE FILED JGM LIEN |
| 07/30/2013 | NTC | NOTICE FILED JGM LIEN/MACOMB |
| 07/24/2013 | MPR | MOTION PRAECIPE FILED FOR 07312013 JUDGE 10 |
| 07/24/2013 | MTN | MOTION FILED PLF SCH EVID HRG/NOH/POS |
| 07/16/2013 | WGP | GARNISHMENT FILED ISS PERIODIC DEDICATED HOMEOWNERSHIP |
| 07/16/2013 | WGP | |

| Date | Code | Desc |
|------|------|------|
| | | GARNISHMENT FILED ISS PERIODIC DEDICATED HOMEOWNERSHIP |
| 07/16/2013 | WGN | GARNISHMENT FILED ISS NON-PERIODIC DEDICATED HOMEOWNER |
| 07/16/2013 | WGN | GARNISHMENT FILED ISS NON-PERIODIC DEDICATED HOMEOWNER |
| 07/16/2013 | MTN | MOTION FILED /AFFIDAVIT/RE BENCH WARRANT(2) |
| 07/09/2013 | ANS | ANSWER FILED DFT CORRECTED ANS TO PLF MTN/POS |
| 07/09/2013 | M | MOTION TO REQUIRE DEF ADD CONTACT INFO, DENIED |
| 07/09/2013 | ORD | ORDER FILED DENY PLF MTN REQUIRE DFT ADDL ID INFO |
| 07/08/2013 | ANS | ANSWER FILED TO MTN/BRF/POS/DFT |
| 07/08/2013 | OBJ | OBJECTION FILED DFTS TO ORD BENCH WARRANT |
| 07/08/2013 | RES | RESPONSE FILED MTN REQ CONTACT INFO/BRF/POS/DFTS |
| 07/05/2013 | NTC | NOTICE FILED 7DAY/PROP/POS |
| 07/05/2013 | NTC | NOTICE FILED 7 DAY/POR |
| 07/03/2013 | MPR | MOTION PRAECIPE FILED FOR 07102013 JUDGE 10 |
| 07/03/2013 | MTN | MOTION FILED REQUIR DFT ADDTL CONTACT/NOH/POS/PLF |
| 07/02/2013 | DM | DEFENSE MOTION TO RECON ORD REQ DEFS COUNSEL TO |
| 07/02/2013 | | PROVIDE CONTACT INFO, DENIED |
| 07/02/2013 | ORD | ORDER FILED DENY MTN RECON CONTACT INFO |
| 06/26/2013 | M | MOTION TO PROVIDE CONTACT INFO FOR DEF, GRTD |
| 06/26/2013 | M | MOTION AFFIDAVIT & BW - A WHITE, GRTD |
| 06/26/2013 | M | MOTION AFFIDAVIT & BW - A SMITH, GRTD |
| 06/26/2013 | OTH | BENCH WARRANTS TO BE SUBMITTED UNDER |
| 06/26/2013 | | 7-DAY ORD |
| 06/26/2013 | ORD | ORDER FILED RE CONTACT INFO ON DFTS |

| Date | Code | Desc |
|------|------|------|
| 06/26/2013 | MTN | MOTION FILED DFTS RECON RE CONTACT INFO/BRF/NOH/POS |
| 06/26/2013 | MPR | MOTION PRAECIPE FILED FOR 07032013 JUDGE 10 |
| 06/26/2013 | OTH | DFT STMT PER 6/26/13 COURT ORD FILED |
| 06/26/2013 | OBJ | OBJECTION FILED TO BENCH WARRANT/DFT |
| 06/25/2013 | APP | APPEARANCE FILED ALAN ACKERMAN |
| 06/20/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 06/19/2013 | RES | RESPONSE FILED MTN PROV CONTACT INFO/BRF/POS/DFT |
| 06/19/2013 | MTN | MOTION FILED BENCH WARRANT/NOH/POS/PLF |
| 06/19/2013 | MTN | MOTION FILED FOR BENCH WARRANT/NOH/POS/PLF |
| 06/18/2013 | MTN | MOTION FILED RE ATTY PROVIDE CONTACT INFO/NOH/POS/PLF |
| 06/18/2013 | MPR | MOTION PRAECIPE FILED FOR 06262013 JUDGE 10 |
| 06/18/2013 | MPR | MOTION PRAECIPE FILED FOR 06262013 JUDGE 10 |
| 06/18/2013 | MPR | MOTION PRAECIPE FILED FOR 06262013 JUDGE 10 |
| 06/18/2013 | MPR | MOTION PRAECIPE FILED FOR 06262013 JUDGE 10 |
| 06/13/2013 | ORD | ORDER FILED TO APPEAR |
| 06/13/2013 | ORD | ORDER FILED TO APPEAR |
| 06/05/2013 | M | MOTION EX PARTE TO REQ NON-PARTY DEDICATED |
| 06/05/2013 | | HOMEOWNERSHIP COUNSEL PROP MGMT, DENIED |
| 06/05/2013 | DM | DEFENSE MOTION TO SHOW CAUSE FOR PLTF'S WRONGFUL EVICTION, |
| 06/05/2013 | | DENIED |
| 06/05/2013 | ORD | ORDER FILED DENY DFT MTN S/C RE WRONGFUL EVICTION |
| 06/05/2013 | ORD | ORDER FILED DENY EXPARTE MTN |
| 06/03/2013 | OTH | RECVR CONCUR W/PLF ANS TO MTN S/C FILED/MEM/POS |
| 05/30/2013 | ANS | ANSWER FILED PLF/TO DFT MTN SH CAUSE/POS |

| Date | Code | Desc |
|------|------|------|
| 05/29/2013 | MPR | MOTION PRAECIPE FILED FOR 06052013 JUDGE 10 |
| 05/29/2013 | MTN | MOTION FILED PLF/TO REQUIRE NONPTY FUNDS/NOH/POS |
| 05/29/2013 | STO | STIP/ORD FILED RE EVID HRG |
| 05/23/2013 | OBJ | OBJECTION FILED DFTS/TO PLF EXPARTE MTN TO ESCROW FUND |
| 05/23/2013 | MTN | MOTION FILED S/CAUSE/BRF/NOH/DFT |
| 05/22/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/22/2013 | MTN | MOTION FILED REQUIR NONPRTY ESCROW FUNDS/POS/PLF |
| 05/21/2013 | M | MOTION FOR ENTRY OF ORD, GRTD IN PART, |
| 05/21/2013 | | DENIED IN PART |
| 05/21/2013 | OTH | ORD RE IMPROPER DEF MTN TO SHOW |
| 05/21/2013 | | CAUSE RE EVICTION |
| 05/21/2013 | ORD | ORDER FILED GRNT PART PLF MTN ENTRY ORD |
| 05/21/2013 | ORD | ORDER FILED RE OBJECTIONS & SHOW CAUSE HEARING |
| 05/21/2013 | ORD | ORDER FILED CONFIRM PARTIAL DEFICIENCY AMT UNDER JGM |
| 05/20/2013 | OTH | CT APPNT RECVR CONCURRENCE W/PLF MTN/POS/FILED |
| 05/20/2013 | ANS | ANSWER FILED TO MTN FOR ENTRY OF ORDER/DFT |
| 05/16/2013 | POR | PROPOSED ORDER FILED |
| 05/15/2013 | MPR | MOTION PRAECIPE FILED FOR 05222013 JUDGE 10 |
| 05/15/2013 | MTN | MOTION FILED PLF ENTRY ORDER/BRF/NOH/POS |
| 05/10/2013 | OBJ | OBJECTION FILED DFT/TO PLF PRESENT ORD/SH CAUSE/BRF |
| 05/10/2013 | NOH | NOTICE OF HEARING FILED |
| 05/10/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/10/2013 | MPR | MOTION PRAECIPE FILED FOR 05292013 JUDGE 10 |
| 05/08/2013 | OTH | 7-DAY ORDER GRT COSTS & FEES |

| Date | Code | Desc |
|------|------|------|
| 05/08/2013 | | SUBJECT TO CONTESTED ATTY FEES TO |
| 05/08/2013 | | BE FILED |
| 05/08/2013 | OTH | ORD OF EVICTION GRTD |
| 05/08/2013 | APR | DATE SET FOR EVIDNT HRG ON 05292013 01 30 PM Y 10 |
| 05/08/2013 | ORD | ORDER FILED EVICTION |
| 05/08/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 05/08/2013 | NTC | NOTICE FILED 7 DAY/POR |
| 05/06/2013 | MTN | MOTION FILED DFTS/FOR EVID HRG/ANS TO MTN/TO EST/BRF |
| 05/03/2013 | OTH | CRT APPT RECVR CONCUR W/PLF MTN FILED |
| 04/30/2013 | MTN | MOTION FILED ESTAB/CONFIRM DEFICIENCY/NOH/POS/PLF |
| 04/29/2013 | MPR | MOTION PRAECIPE FILED FOR 05082013 JUDGE 10 |
| 03/05/2013 | OI | OPINION ISSUED DENY M FOR PARTIAL RECONSIDERATION |
| 03/05/2013 | OPN | OPINION FILED & ORD DENY MTN PT RECON |
| 02/26/2013 | RES | RESPONSE FILED DFT TO PLF MTN RECON/BRF/POS |
| 02/19/2013 | MTN | MOTION FILED PLF PT RECON RE ACCESS/POS |
| 02/13/2013 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 02/12/2013 | M | MOTION RECEIVER'S FOR ACCESS, GRTD |
| 02/12/2013 | OTH | ORD GRT RECEIVER'S ACCES |
| 02/12/2013 | ORD | ORDER FILED GRANT RECVR MTN |
| 02/12/2013 | ORD | ORDER FILED GRT RECEIVERS MTN ACCESS |
| 02/07/2013 | RES | RESPONSE FILED RECVR MTN ACCESS/POS/PLF |
| 02/05/2013 | MTN | MOTION FILED ACCESS/NOH/MEM/RCVR |
| 02/05/2013 | MPR | MOTION PRAECIPE FILED FOR 02132013 JUDGE 10 |
| 11/20/2012 | OTH | SHERIFFS REPORT OF SALE FILED |
| 11/15/2012 | OTH | ACCEPTANCE OF RECEIVERSHIP FILED/POS |
| 11/15/2012 | OTH | BOND OF RECEIVER FILED |

| Date | Code | Desc |
|------|------|------|
| 11/13/2012 | MEM | MEMORANDUM FILED TO MTN FOR POSSESSION/POS/PLF |
| 11/13/2012 | ORD | ORDER FILED DENY DFT MTN ALLOW SALE PROP |
| 11/13/2012 | DM | DEFENSE MOTION TO ALLOW SALE OF PROPERTY, DENIED |
| 11/13/2012 | M | MOTION TO CONFIRM SALE, GRTD |
| 11/13/2012 | ORD | ORDER FILED GRT PLF MTN CONFIRM SALE |
| 11/13/2012 | OI | OPINION ISSUED APPOINTING RECIEVER |
| 11/13/2012 | RES | RESPONSE FILED TO PLF MTN CONFIRM SHERIFF SALE/BRF |
| 11/13/2012 | OPN | OPINION FILED ORD/APPT RECVR |
| 11/13/2012 | RES | RESPONSE FILED MTN POSSESSION/DFT |
| 11/07/2012 | RES | RESPONSE FILED TO MTN TO ALLOW SALE/POS/PLF |
| 11/07/2012 | NOH | NOTICE OF HEARING FILED |
| 11/07/2012 | MPR | MOTION PRAECIPE FILED FOR 11142012 JUDGE 10 |
| 11/06/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 11/01/2012 | MPR | MOTION PRAECIPE FILED FOR 11142012 JUDGE 10 |
| 11/01/2012 | MPR | MOTION PRAECIPE FILED FOR 11142012 JUDGE 10 |
| 11/01/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 11/01/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 10/31/2012 | MPR | MOTION PRAECIPE FILED FOR 11072012 JUDGE 10 |
| 10/31/2012 | MPR | MOTION PRAECIPE FILED FOR 11072012 JUDGE 10 |
| 10/31/2012 | MTN | MOTION FILED FOR POSSESSION/NOH/POS/PLF |
| 10/31/2012 | MTN | MOTION FILED TO CONFIRM SHERIFF SALE/NOH/POS/PLF |
| 10/29/2012 | MPR | MOTION PRAECIPE FILED FOR 11072012 JUDGE 10 |
| 10/29/2012 | MTN | MOTION FILED ALLOW SALE PROP/BRF/DFT |
| 10/29/2012 | AFF | AFFIDAVIT FILED OF DFTS |
| 09/26/2012 | DM | DEFENSE MOTION TO STAY SHERIFF SALE AND |
| 09/26/2012 | | SET EVID HRG, DENIED |

| Date | Code | Desc |
|------|------|------|
| 09/26/2012 | M | MOTION FOR ENTRY OF INSURANCE |
| 09/26/2012 | | REP, GRANTED |
| 09/26/2012 | M | MOTION FOR ORD TO SHOW CAUSE, W/DRAWN |
| 09/26/2012 | | W/O PREJ |
| 09/26/2012 | ORD | ORDER FILED RE WITHDRAW MTN SHOW CAUSE |
| 09/26/2012 | ORD | ORDER FILED GRNT PLF MTN REP INSPECT PROP |
| 09/26/2012 | ORD | ORDER FILED DENY DFT MTN STAY SHERIFF SALE & ALLOW EVI |
| 09/24/2012 | OPN | OPINION FILED /ORDER |
| 09/18/2012 | MPR | MOTION PRAECIPE FILED FOR 09262012 JUDGE 10 |
| 09/18/2012 | MPR | MOTION PRAECIPE FILED FOR 09262012 JUDGE 10 |
| 09/18/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 09/18/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 09/18/2012 | MPR | MOTION PRAECIPE FILED FOR 09262012 JUDGE 10 |
| 09/18/2012 | NOH | NOTICE OF HEARING FILED |
| 09/17/2012 | DM | DEFENSE MOTION DISQUALIFY, DENIED |
| 09/17/2012 | OPN | OPINION FILED ORD/DENY DFT MTN DSQULFY JDG |
| 09/17/2012 | MPR | MOTION PRAECIPE FILED FOR 09262012 JUDGE 07 |
| 09/17/2012 | NOH | NOTICE OF HEARING FILED |
| 09/14/2012 | ANS | ANSWER FILED MTN STAY SALE/EVID HRG/POS/PLF |
| 09/14/2012 | ANS | ANSWER FILED MTN DISQUALIFY JDG/POS/PLF |
| 09/13/2012 | NTC | NOTICE FILED W/DRAW STP RE APPRAISAL |
| 09/12/2012 | OTH | DFT EXHIBITS TO MTN TO DISQUALIFY JUDGE FILED |
| 09/12/2012 | MPR | MOTION PRAECIPE FILED FOR 09262012 JUDGE 10 |
| 09/12/2012 | MTN | MOTION FILED STAY SHERIFF SALE/BRF/DFTS |
| 09/10/2012 | ORD | ORDER FILED RE S/CAUSE & MTN HRGS |
| 09/10/2012 | MPR | MOTION PRAECIPE FILED FOR 09192012 JUDGE 10 |
| 09/06/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 09/06/2012 | NOH | NOTICE OF HEARING FILED /POS |

| Date | Code | Desc |
|------|------|------|
| 09/06/2012 | MPR | MOTION PRAECIPE FILED FOR 09192012 JUDGE 10 |
| 09/06/2012 | MPR | MOTION PRAECIPE FILED FOR 09192012 JUDGE 10 |
| 09/05/2012 | APR | DATE SET FOR HEARING ON 09182012 08 30 AM Y 10 |
| 09/05/2012 | OSC | ORDER SHOW CAUSE FILED HRG/MTN DISQUALIFY |
| 08/31/2012 | MTN | MOTION FILED DFTS/TO DISQUALIFY JUDGE/BRF |
| 08/31/2012 | RES | RESPONSE FILED DFTS/TO PLF MTN SH CAUSE |
| 08/31/2012 | NOH | NOTICE OF HEARING FILED /POS |
| 08/29/2012 | M | MOTION TO ENJOIN DEFS FROM FORECLOSED PROP, DENIED |
| 08/29/2012 | ORD | ORDER FILED DNY MTN TO ENJOIN DFTS FROM PRPRTY |
| 08/29/2012 | MPR | MOTION PRAECIPE FILED FOR 09052012 JUDGE 10 |
| 08/29/2012 | MTN | MOTION FILED FOR ORD TO SHOW CAUSE/POS |
| 08/28/2012 | RES | RESPONSE FILED TO MTN ENJOINDER/BRF/DFT |
| 08/24/2012 | APP | APPEARANCE FILED /POS/PLF |
| 08/22/2012 | MPR | MOTION PRAECIPE FILED FOR 08292012 JUDGE 10 |
| 08/22/2012 | MTN | MOTION FILED ENJOIN DFT/BRF/NOH/POS/PLF |
| 08/16/2012 | STO | STIP/ORD FILED ENTRY PROP/PERFORM APPRAISAL |
| 07/25/2012 | M | MOTION FOR ENTRY OF DEF JUGMENT, GRTD |
| 07/25/2012 | FDF | FINAL DISP-DEFAULT JGMT |
| 07/25/2012 | JGM | JUDGMENT FILED AGST DFTS |
| 07/24/2012 | RES | RESPONSE FILED MTN DJM/BRF/DFTS |
| 07/23/2012 | DM | DEFENSE MOTION SET ASIDE DEFAULT, DENIED |
| 07/23/2012 | AFF | AFFIDAVIT FILED ALAN ACKERMAN |
| 07/23/2012 | OPN | OPINION FILED ORD/DENY DFT MTN SET ASIDE DEFAULT |
| 07/20/2012 | RES | RESPONSE FILED TO MTN TO SET ASIDE DEFAULT/BRF/POS/PLF |
| 07/19/2012 | BRF | BRIEF FILED SUPPT MTN SET ASIDE DEF/DFT |
| 07/18/2012 | MPR | MOTION PRAECIPE FILED FOR 07252012 JUDGE 10 |

| Date | Code | Desc |
|------|------|------|
| 07/18/2012 | MPR | MOTION PRAECIPE FILED FOR 07252012 JUDGE 10 |
| 07/18/2012 | MTN | MOTION FILED DFTS SET ASIDE DEFAULT |
| 07/18/2012 | MTN | MOTION FILED PLFS DJM/BRF/NOH/POS |
| 07/12/2012 | ATC | ANSWER TO COMPLAINT FILED /AFM/DFTS |
| 06/29/2012 | POS | AFFIDAVIT/PROOF OF SERVICE FILED |
| 06/27/2012 | AFD | AFFIDAVIT & DEFAULT FILED |
| 06/13/2012 | SUM | P/S ON SUMMONS FILED 05/15/12 |
| 05/14/2012 | SUM | P/S ON SUMMONS FILED 05/11/12 |
| 05/14/2012 | SUM | P/S ON SUMMONS FILED 05/14/12 |
| 05/09/2012 | M | MOTION EXT SUMMONS, GRTD |
| 05/09/2012 | M | MOTION FOR ALT SERV, GRTD |
| 05/09/2012 | OAS | ORDER FOR ALTERNATIVE SERVICE FILED |
| 05/09/2012 | EXS | ORDER EXTENDING SUMMONS FILED 07/02/12 |
| 05/03/2012 | SO | SCHEDULING ORDER FILED |
| 05/02/2012 | MPR | MOTION PRAECIPE FILED FOR 05092012 JUDGE 10 |
| 05/02/2012 | MTN | MOTION FILED EXTEND SUM/ALT METHODS/BRF/PLF |
| 04/28/2012 | SOP | SCHEDULING ORDER WRITTEN |
| 04/28/2012 |  | 08/30/2012 EXPERT DATE. |
| 04/28/2012 |  | 10/29/2012 CASE EVALUATION DATE. |
| 04/28/2012 |  | 08/31/2012 WITNESS DATE. |
| 04/28/2012 |  | 10/31/2012 MOTION DATE. |
| 04/28/2012 |  | 10/01/2012 DISCOVERY DATE. |
| 04/28/2012 |  | 11/30/2012 SETTLEMENT CONFERENCE. |
| 04/28/2012 |  | 02/05/2013 TRIAL DATE. |
| 04/28/2012 | APR | DATE SET FOR PRETRIAL ON 11302012 08 30 AM |
| 04/28/2012 | APR | DATE SET FOR TRIAL ON 02052013 08 30 AM |
| 04/16/2012 | AFF | AFFIDAVIT FILED OF THOMAS RYAN |
| 03/23/2012 | SUM | P/S ON SUMMONS FILED 03/12/12 |

| Date | Code | Desc |
|------|------|------|
| 03/22/2012 | AFD | AFFIDAVIT & DEFAULT FILED |
| 03/21/2012 | SUM | P/S ON SUMMONS FILED 02/20/12 |
| 03/14/2012 | ORD | ORDER FILED DENY EXPART MTN ALT SVC |
| 03/14/2012 | OI | OPINION ISSUED & OD DEN MTN ALT SERV |
| 03/05/2012 | MSV | MOTION FOR ALT SERVICE FILED /ORD DENIED |
| 02/27/2012 | SUM | P/S ON SUMMONS FILED 02/20/12 |
| 02/16/2012 | C | COMPLAINT FILED |
| 02/16/2012 | SI | SUMMONS ISSUED |

Privacy/Legal   |   Accessibility                                        © 2017 Oakland County

# Exhibit 6

Received for Filing Oakland County Clerk 2016 MAR 31 AM 09:42

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

TWO HUNDRED EIGHTY FIVE WEST
HICKORY GROVE, LLC,

    Plaintiff/Counter-Defendant,

vs                      Case No.: 14-138370-CH

ELBERT L. HATCHETT;
LAURESTINE W. HATCHETT;         THE HONORABLE
                          NANCI J. GRANT

    Defendants/Counter-Plaintiff,
and

UNITED STATES OF AMERICA; and
MICHIGAN DEPARTMENT OF TREASURY,

    Defendants.

_____/

| | |
|---|---|
| Darius W. Dynkowski (P52382) | Elbert L. Hatchett (P14735) |
| Attorney for Plaintiff | In Propria Persona |
| 100 W. Long Lake Road, Suite 210 | 485 Orchard Lake Road |
| Bloomfield Hills, MI 48304 | Pontiac, MI 48341 |
| (248) 537-1155 | (248) 334-1587 |
| | |
| | Ernest L. Jarrett P.C. |
| | By: Ernest L. Jarrett (P29770) |
| | Attorney for Defendant |
| | Laurestine W. Hatchett |
| | 65 Cadillac Square, Suite 2100 |
| | Detroit, MI 48226 |
| | (313) 964-2002 |

_____/

ORDER CONFIRMING PARTIAL DEFICIENCY AMOUNT
UNDER JUDGMENT OF FORECLOSURE DATED OCTOBER 8, 2014

At a Session of said Court, held in the
Courthouse Tower, City of Pontiac, County of
Oakland, State of Michigan, on:

                3-30-16

                NANCI J. GRANT
PRESENT: HON. _____CHIEF JUDGE_____
                CIRCUIT COURT JUDGE

    WHEREAS, Plaintiffs having filed a Motion, the Court being

otherwise fully advised in the premises;

5/11/2016



IT IS HEREBY ORDERED that a Partial Deficiency Judgment in the amount of $_368,222.44_ shall be, and hereby is, entered against Defendants, Elbert L. Hatchett and Laurestine W. Hatchett, husband and wife, jointly and severally.

IT IS FURTHER ORDERED that the above amount is due within twenty-one (21) days of entry of this Order with additional interest from April 20, 2016 at the yearly rate of five (5%) percent and additional penalties and interest, if any, on delinquent taxes and any tax costs.

IT IS FURTHER ORDERED that this Court retain jurisdiction of this matter for purposes of collection issues related hereto.

CIRCUIT COURT JUDGE

F:\205 N. Hickory Grove, LLC\vs Hatchett, OSA and HDOF\Order Confirming Partial Deficiency Amount Under Judgment of Foreclosure Dated October 9, 2014.wpd

Received for Filing Oakland County Clerk 2016 MAR 31 AM 09:42

2

5/11/2016

# Exhibit 7

Received for Filing Oakland County Clerk 2014 OCT 10 AM 10:42

STATE OF MICHIGAN
IN THE 6TH CIRCUIT DISTRICT COURT

285 W HICKORY GROVE, LLC,
**Plaintiff**

Case No. 2014-138370-CH

v.

Hon. ~~NANCY~~ GRANT
*Nanci*

ELBERT L HATCHETT, LAURESTINE W
HATCHETT, UNITED STATES OF AMERICA,
MICHIGAN DEPARTMENT OF TREASURY
**Defendants**

| Darius W Dynkowski (P52382) | Elbert L Hatchett (P147735) |
|---|---|
| Attorney for Plaintiff | Attorney for Hatchett Defendants |
| 100 W Long Lake Rd – Ste 210 | 485 Orchard Lake Rd |
| Bloomfield Hills MI 48304 | Pontiac MI 48341 |
| 248-537-1155 | 248-334-1587 |

## JUDGMENT OF FORECLOSURE

The Court having granted Plaintiffs Motion for Summary Disposition and being otherwise fully

advised does hereby ORDER the following with respect to the following real property:

Property is situated in the Township of Bloomfield, County of Oakland, State of
Michigan and particularly described as:

Part of the East 1/2 of the Southeast 1/4 of Section 9, Town 2 North,
Range 10 East, Township of Bloomfield, Oakland County Michigan,
described as: Beginning at a point bearing West 978.75 feet from the
East 1/4 corner of Section 9, which is the intersection of the centerline
of Hickory Grove Road with the centerline of a 60 foot private road;
thence East along center line of Hickory Grove Road; 383.75 feet;
thence South 38 degrees 40 minutes 00 seconds West 323 feet; thence
West 244.60 feet; thence North 13 degrees 53 minutes 10 seconds East
along the centerline of said 60 foot road, 260 feet to the point of
beginning, except that part taken for Orange Lake Road ..

Tax ID: 19-09-400-004

More commonly known as: 285 W. Hickory Grove Rd, Bloomfield Hills, Michigan

A.  A Judgment of Foreclosure is granted in favor of Plaintiff and against Defendants Elbert

L Hatchett and Laurestine W Hatchett.

B.  Defendants' Counter-Complaint is dismissed with prejudice.

C. The rights of the Michigan Department of Treasury are currently before the Court of Claims (Case No. 14-000204-MT) and are not impacted by this judgment.

D. Defendant, United States of America has previously been dismissed by a stipulated order establishing priority.

E. The mortgage dated October 30, 2006, with Elbert L Hatchett and Laurestine W Hatchett, as Mortgagors, and 285 W Hickory Grove, LLC as Assignee/Mortgagee (hereinafter referred to as "Subject Mortgage"), in the original balance of Eight Hundred Forty Thousand and 00/100 ($840,000.00) Dollars, is a valid first lien and enforceable in all respects;

F. A monetary judgment is hereby entered against Defendants Elbert L Hatchett and Laurestine W Hatchett, as of October 1, 2014 in the amount of One-Million Four Hundred Fourteen Thousand Seven Hundred Fifty Nine and 99/100 ($1.414.759.99) Dollars, plus interest continuing to accrue at the current note rate of 5.00% and applicable attorney fees and allowable costs, including insurance, maintenance, improvements, costs of preservation, and property taxes paid prior to the Sheriff's sale confirmation;

G. The interest of Defendants Elbert L Hatchett and Laurestine W Hatchett in the real property commonly known as 285 W. Hickory Grove Rd, Bloomfield Hills, Michigan, and more particularly described above, shall be subject to sale as provided below if the judgment amount is not paid in full within twenty-one (21) days from the date of this Judgment;

H. If the judgment amount is not paid in full within twenty-one (21) days from the date of the Judgment, the mortgage is adjudged and ordered to be foreclosed upon the Subject

Received for Filing Oakland County Clerk 2014 OCT 10 AM 10:42

Property and, as provided by law, the Subject Property shall be sold to satisfy this Judgment with interest thereon and the costs and expenses of such sale at public auction by or under the direction of the Oakland County Sheriff, and such sale upon Plaintiff Mortgagee's written application shall be conducted and notices given in accordance with the practice of this Court and the statutes in such case made and provided;

I. The Sheriff shall give public notice of this sale in accordance with the rules of the Court under MCL 600.3101, et seq.;

J. Plaintiff Mortgagee, or any of the parties in this suit, may purchase the Subject Property at the foreclosure sale. Any bid by Plaintiff Mortgagee at the foreclosure sale shall be deemed to be a credit bid against the indebtedness due Plaintiff Mortgagee up to the total amount of the indebtedness. The Sheriff shall execute a deed to the purchaser of the Property at the sale. The sale proceeds shall be applied first to payment of the expenses of the sale including, but not limited to, fees for posting, advertising, recording fees and transfer taxes, if any, incident to the recording of the Sheriffs Deed of Sale, and then to payment to Plaintiff Mortgagee of the indebtedness and any additional amounts due Plaintiff Mortgagee with interest thereon, and the costs and expenses of the sale, the Sheriff shall specify the amount of the deficiency in the report of the sale.

K. The Sheriff shall take receipt of the amount paid or credited, and file the receipt with a report of sale with this Court, and the Sheriff shall bring the surplus sale proceeds, if any, into this Court without delay to abide the further Order of this Court;

L. The sale shall be confirmed upon ex-parte motion by any party to this action or by the purchaser at the sale;

Received for Filing Oakland County Clerk 2014 OCT 10 AM 10:42

Received for Filing Oakland County Clerk 2014 OCT 10 AM 10:42

M. Six (6) months after the sale date, Defendants Elbert L Hatchett and Laurestine W Hatchett, and all persons claiming from or under them, as well as any junior lien claimants, shall be forever barred and foreclosed of and from all equity of redemption and claim to the Property, if not redeemed from the sale prior to that time;

N. IT IS FURTHER ORDERED that any sums paid for the payment of hazard insurance and taxes assessed against the property, may be added to the amount of the judgment or redemption in compliance with MCL 600.3145;

O. If the Property is not redeemed within six (6) months after the sale date, the purchaser of the Property at the sale shall be let into possession of the Property, and any of the parties to this action who are in possession of the Property or any part thereof, and any persons who has come into possession under them, shall deliver possession to the purchaser on production of the Sheriffs Deed for the Property and a certified copy of the Order confirming the sale report after the deed has become operative;

P. If the sale proceeds are insufficient to pay the indebtedness due to Plaintiff Mortgagee, with interest thereon and the costs and expenses of sale as mentioned above, the Sheriff shall specify the deficiency amount in the report of sale. Upon confirmation of the report of sale, Defendants Elbert L Hatchett and Laurestine W Hatchett shall pay to Plaintiff Mortgagee the deficiency amount, with interest thereof, from the date of report. Upon entry of the Order confirming the sale, the Court will enter a deficiency Judgment against Defendants Elbert L Hatchett and Laurestine W Hatchett, which shall be subject to immediate collection pursuant to applicable statutes, rules and practices, and the Clerk of the Court shall issue execution against Defendants for the deficiency amount without further notice to the Defendants;

Q. The Court will retain jurisdiction of an award of taxable costs and attorney fees to Plaintiff Mortgagee as permitted by the terms of the Note and/or Mortgage and the entry of this Order shall be without prejudice to any right of Plaintiff Mortgagee to claim, provide, and receive an award of costs and/or attorney fees;

R. Pursuant to MCR 2.604(B), the Court determines that there is no just cause for delay and directs that this Order constitute a final judgment as to the matter contained herein;

S. **IT IS FURTHER ORDERED** that Plaintiff may cause the Judgment of this Court to be recorded in the Office of the Register of Deeds for Oakland County.

T. This Order DOES resolve the last pending claim and DOES close the case.

**IT IS SO ORDERED.**

Date:  October 8, 2014

Hon. Nancy Grant
Circuit Court Judge
Nanci

| Drafted by: | When recorded return to Drafter |
|---|---|
| Jeffrey Z Dworin | Send subsequent tax bills to: N/A |
| 838 W Long Lake Rd – Ste100 | Tax Parcel #  19-09-400-004 |
| Bloomfield Hills, MI 48302 | Recording Fee    $26.00 |
| 248-322-9900 | Transfer Tax: exempt per MCL 207.505(l) ; 207.526(l) |

# Exhibit 8

| STATE OF MICHIGAN PROBATE COURT COUNTY OF Oakland | STATEMENT AND PROOF OF CLAIM | FILE NO. 2014 0000358665 CA DAO |
|---|---|---|

Estate of  Laurastine Hatchett

I,  285 W. Hickory Grove, LLC  of  c/o Steinberg Shapiro & Clark 25925 Telegraph
Creditor's name                                                                                 Address
Suite 203, Southfield, MI, 48033  submit the following claim against the estate for the sum set forth.*

| DESCRIPTION OF CLAIM | AMOUNT |
|---|---|
| Deficiency Judgment dated March 30, 2016 | 368,222.44 |
| | |
| | |
| | |
| | |
| | |
| | 368,222.44 |

There is now due on the claim, above all legal setoffs, the sum of:

☐ Notice to interested persons:  This is a claim by a personal representative for an obligation that arose before the death of the decedent.  A hearing will be held to determine whether to allow the claim.  You may object to the claim before or at the hearing.

I declare under the penalties of perjury that this statement and proof of claim has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

Attorney signature                                                         05/10/2016
Tracy M. Clark                                      P60262       Date
Name (type or print)                          Bar no.          Claimant signature
25925 Telegraph Rd, Suite 203                                100 W. Long Lake Rd. Ste. 210
Address                                                                      Address
Southfield, MI, 48033              (248) 352-4700      Bloomfield Hills, MI 48302
City, state, zip                            Telephone no.     City, state, zip                         Telephone no.

* 1. Describe nature of claim or attach a statement.  Attach copy of receipt or other evidence of payment if submitted by assignee.
   2. Claims must be presented either personally or by mail to the fiduciary on or before the last day for presentment of claims.
      This claim may also be filed with the probate court (see reverse side for proof of service).

(SEE SECOND PAGE)

USE NOTE: If this form is being filed in the circuit court family division, please enter the court name and county in the upper left-hand corner of the form.

Do not write below this line - For court use only

PC 579  (9/10)  STATEMENT AND PROOF OF CLAIM                    MCL 700.3804, MCL 700.5429, MCL 700.7609, MCR 5.208(C)



## PROOF OF SERVICE

I served upon <u>Franklin Hatchett / Ayanna Hatchett, co-conservators</u>
             Name

fiduciary, a copy of this statement and proof of claim on <u>May 10, 2016</u>      by <u>first class mail to</u>
                                                        Date                             State method and address of service

<u>Franklin Hatchett, 732 Weybridge, Bloomfield Hills, MI 48304/Ayanna Hatchett, 211 E. Merrill #406, Birmingham, MI 48009</u>

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

<u>5/10/2016</u>                                   <u>Christine Q. Leach</u>
Date                                          Signature

## ACKNOWLEDGMENT OF SERVICE

Service of the attached statement and proof of claim is acknowledged.

_____          _____
Date                                      Signature

5/11/2016

# Exhibit 9

# IN RE: LAURESTINE HATCHETT

# FRANKLIN HATCHETT

December 2, 2016

*Prepared for you by*



**IENENSTOCK**

NATIONWIDE COURT REPORTING & VIDEO

Bingham Farms/Southfield • Grand Rapids
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw • Troy

```
 1              UNITED STATES BANKRUPTCY COURT
 2               EASTERN DISTRICT OF MICHIGAN
 3
 4    IN RE:                      Case No. 16-47798-MBM
 5    LAURESTINE HATCHETT,        Chapter 13
 6                Debtor.         Hon. Marci B. McIvor
 7    _____/
 8
 9        The Deposition of FRANKLIN HATCHETT,
10    Taken at 25925 Telegraph Road, Suite 203,
11    Southfield, Michigan,
12    Commencing at 1:38 p.m.,
13    Friday, December 2, 2016,
14    Before Laura T. Ambro, CSR-5882.
15
16
17
18
19
20
21
22
23
24
25
```

ᗷIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

1   APPEARANCES:

2

3   MARK H. SHAPIRO

4   Steinberg, Shapiro & Clark

5   25925 Telegraph Road

6   Suite 203

7   Southfield, Michigan 48033

8   248.352.4700

9   shapiro@steinbergshapiro.com

10      Appearing on behalf of the Chapter 13 Trustee.

11

12  MARCELLUS LONG, JR.

13  Hatchett, DeWalt & Hatchett, PLLC

14  485 Orchard Lake Road

15  Pontiac, Michigan 48341

16  248.334.1587

17  m.long@hatchettlawfirm.com

18      Appearing on behalf of the Witness.

19

20

21

22

23

24

25

BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

```
 1                   TABLE OF CONTENTS

 2

 3   WITNESS                                    PAGE

 4   FRANKLIN HATCHETT

 5

 6   EXAMINATION

 7   BY MR. SHAPIRO: ...................................    4

 8

 9                     EXHIBITS

10

11   EXHIBIT                                    PAGE

12   Exhibits attached to transcript.

13

14   DEPOSITION EXHIBIT W .............................    4

15   DEPOSITION EXHIBIT X .............................    4

16   DEPOSITION EXHIBIT Y .............................    4

17   DEPOSITION EXHIBIT Z .............................    4

18

19

20

21

22

23

24

25
```

BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

```
 1   Q.   Line 507 is the IRS tax lien?

 2   A.   Uh-huh.

 3   Q.   So, that was your mother's obligation, not yours?  So,

 4        it got paid out of her half of the proceeds?

 5   A.   Correct.

 6   Q.   Can you tell me who received the proceeds check for

 7        your mother's portion of the money?

 8   A.   I did.

 9   Q.   And what did you do with that check?

10   A.   I gave that check to my father to put into his account

11        at the office.

12   Q.   And why did you do that?

13   A.   Because all that money is used to take care of my

14        mother, as well as their situation.

15   Q.   Was it your understanding that it was your father's

16        responsibility to hold that money and then use it to

17        pay your mother's expenses?

18   A.   For the most part, yes.  Their expenses together, if

19        you will.

20   Q.   Was it your understanding that you had no

21        responsibility to hold that money or to use it to pay

22        your mother's expenses?

23   A.   No.  It was my understanding that he's been doing a

24        damn good job of taking care of her all of his life,

25        all of her life.  And I didn't see anything that would
```

BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO

1       stop that now.

2   Q.   Did you receive your check?

3   A.   I did.

4   Q.   Are you still in possession of the $139,739.75 that you

5        received?

6   A.   I wish I was.  No.

7   Q.   Can you tell me what you did with your portion of the

8        proceeds?

9   A.   I spent it on, you know, on --

10            MR. LONG:  Objection, relevance.

11  A.   Yeah, what I do with mine is what I do with mine.  But

12       basically it's all my expenses, living expenses, et

13       cetera.

14  BY MR. SHAPIRO:

15  Q.   Was the money deposited into a particular bank account?

16  A.   Yes.

17  Q.   Which one?

18  A.   Mine.

19  Q.   At what bank?

20  A.   Affinity.

21  Q.   Is that a credit union?

22  A.   It is.  It's now Legacy Credit Union now.  They changed

23       names.

24  Q.   Do you still have an account there?

25  A.   I certainly do.

```
 1        the exact number.

 2   Q.   Did she tell you, during the course of that

 3        conversation, that these liabilities being paid were

 4        your father's liabilities?

 5   A.   Yes.

 6   Q.   What did your mother receive in exchange for the

 7        payment of $75,000 of your father's tax liabilities?

 8   A.   Essentially she just maintained her standard of living.

 9        Without it, her standard of living would have

10        diminished.

11   Q.   Couldn't she have done that with $75,000 in her own

12        name?

13   A.   For a short term, yes.  Not long term.

14   Q.   How long of a term do you think that 75,000 would have

15        lasted with her expenses?

16   A.   Well, from this standpoint -- let's look at it from

17        this standpoint:  If you put 75 back in your business,

18        and this business is how you make your living, then

19        that living is going to sustain you for the rest of

20        your life.  That's how I would look at it.

21   Q.   So, a couple questions about that.  What were your

22        mother's expenses during this time frame?  Let's just

23        say on a monthly basis.

24   A.   Shoot.  That one I'm going to defer to Ayanna, because

25        she is the one that did most of the work with her on
```



# Exhibit 10

1              UNITED STATES BANKRUPTCY COURT

2              EASTERN DISTRICT OF MICHIGAN

3                   SOUTHERN DIVISION

4

5    In Re:

6    LAURESTINE HATCHETT,

7              Debtor.

8                          Case No. 16-47798-MBM

9                          Chapter 13

10                         Hon. Marci B. McIvor

11   _____

12

13

14        The Deposition of AYANNA HATCHETT,

15        Taken at 25925 Telegraph Road, Suite 203,

16        Southfield, Michigan,

17        Commencing at 10:06 a.m.,

18        Monday, December 19, 2016,

19        Before Alison C. Webster, CSR-6266, RPR.

20

21

22

23

24

25

```
 1   APPEARANCES:

 2

 3   MARK H. SHAPIRO

 4   Steinberg, Shapiro & Clark

 5   25925 Telegraph Road

 6   Suite 203

 7   Southfield, Michigan 48033

 8   248.352.4700

 9   shapiro@steinbergshapiro.com

10   Appearing on behalf of the Chapter 13 Trustee.

11

12   MARCELLUS LONG, JR.

13   Hatchett, DeWalt & Hatchett, PLLC

14   485 Orchard Lake Road

15   Pontiac, Michigan 48341

16   248.334.1587

17   m.long@hatchettlawfirm.com

18   Appearing on behalf of Ayanna Hatchett.

19

20

21

22

23

24

25
```

1                          TABLE OF CONTENTS

2

3      Witness                              Page

4      AYANNA HATCHETT

5

6      EXAMINATION

7      BY MR. SHAPIRO:                        4

8

9                              EXHIBITS

10

11     Exhibit                              Page

12

13     (Exhibits attached to transcript.)

14

15     DEPOSITION EXHIBIT AA                 95

16     DEPOSITION EXHIBIT BB                136

17

18

19

20

21

22

23

24

25

```
 1        logical next step to file in light of that, so --
 2        because of that debt.
 3   Q.   And do you recall who that debt was owed to?
 4   A.   It was a judgment, I believe, that was owed to
 5        Mr. Ackerman.
 6   Q.   Okay.  You are the appointed co-guardian for your
 7        mother; correct?
 8   A.   Correct.
 9   Q.   And that's along with your father?
10   A.   Yes.
11   Q.   And the papers that I saw indicated that that
12        appointment was made in December of 2014.  Does that
13        sound right?
14   A.   Yeah, that sounds about right.
15   Q.   And it looks like it was renewed on February 13th,
16        2016, and it's good until February of 2017.  Is that
17        your understanding, as well?
18   A.   That's correct.
19   Q.   Can you tell me what prompted the filing of the
20        petition for guardianship?
21   A.   Her incapacity.
22   Q.   And can you tell me what your duties are as a
23        co-guardian for your mother?
24   A.   Well, basically, as a co-guardian -- because my father
25        and I have independent rights, so if there's something
```

1       -- like, if she needed security disability or any sort

2       of serious assistance or enter in terms of agreements,

3       that would be something that I would help and review

4       on her behalf if my father, for whatever reason,

5       wasn't able to do it.  Basically, it's just in

6       assistance to her because she cannot make all

7       decisions on her own anymore as an adult.

8   Q.  And as far as you know, you fulfilled your obligations

9       as a co-guardian for your mother?

10  A.  Yes, I have continued to.

11  Q.  And as an attorney, I'm sure you're familiar with the

12      term fiduciary duty.

13  A.  Yes.

14  Q.  Can you explain to me what that term means to you in

15      connection with your appointment as a co-guardian for

16      your mother?

17  A.  Just to have some sort of -- well, right, co-guardian

18      and co-conservator.  So, again, I have independent

19      powers along with my brother.  So, between the two of

20      us, as long as one of us is reviewing finances and

21      making sure that, you know, she's provided for and

22      taken care of, that's our general obligation as far as

23      the fiduciary duty is concerned, and make sure that,

24      you know, whatever monies coming into her possession

25      are used in her best interest.

1   Q.   You are also the co-conservator for your mother -- I

2        think you referenced that a second ago -- in terms of

3        you and your brother being co-conservators.

4   A.   Correct.

5   Q.   And can you tell me -- and I apologize for my

6        ignorance on this because I'm not -- I don't do much

7        probate work, but what's the difference between a

8        guardian and a conservator?

9   A.   Well, I think, very loosely, the guardian is dealing

10      more with just legal paperwork sort of things.

11      Conservators are -- it's more of a focus on the

12      financial side of an individual's rights and general

13      obligations.  So, that's how it's always kind of been

14      explained to me, the difference between money and

15      legalities, more generally.

16   Q.   That's a better explanation than I've gotten up until

17      now, so that's good.

18              And any difference in terms of who controls

19      the protected person's assets?

20   A.   Well, not necessarily.  I guess it just depends on

21      what the assets are, I'd say.  Relative to my brother

22      and I, there are some assets that I think he shared

23      with my mother that I did not, so it just kind of made

24      sense.

25   Q.   I'm not asking as between you and your brother.  I'm

```
1      asking as between the guardian and the conservator,
2      who would be --
3   A. Oh, I see.  Well, the conservator and the
4      guardianship, from what I understand, do have the
5      right to make assessments regarding assets and
6      reviewing assets.  But the conservator, from what I
7      understand, specifically, like I said, it's more of
8      kind of a financial position, if you will.  And I
9      don't know if there's really a rank or priority,
10     though, between the two, to be honest with you,
11     because I -- and the reason I'm a little hesitant, to
12     be honest with you, just some prior personal
13     experiences, I know that there are guardians who were
14     able to get, like, Social Security checks on behalf of
15     a person that was incapacitated for a family member
16     and they weren't conservators, and other conservators
17     who were able to get the checks, so there is a little
18     bit of an overlap there in terms of, you know, what a
19     guardian can do relative to assets and finances.
20  Q. Okay.  Fair statement, then, that both a conservator
21     and a guardian would owe a fiduciary duty to the
22     protected person?
23  A. I think that's a fair statement, yeah.
24  Q. Any difference between their fiduciary duties, as far
25     as you know?
```